BALDWIN ET AL., TRUSTEES, *v.* SCOTT COUNTY MILLING CO.

No. 650. Argued April 21, 1939.—Decided June 5, 1939.

*Mr. H. H. Larimore,* with whom *Mr. Thomas J. Cole* was on the brief, for petitioners.

*Mr. James A. Finch,* with whom *Messrs. Ralph E. Bailey* and *R. F. Baynes* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The decision in this case depends on provisions of the Interstate Commerce Act and orders of the commission.

In September, 1924, respondent and others complained to the commission that the tariff charges they had been and were then paying the Missouri Pacific and other carriers for the transportation of coal from mines in southern Illinois and western Kentucky to destinations in southeastern Missouri and northeastern Arkansas, were excessive. They asked the commission to establish reasonable rates for the future, to ascertain the amount of damages they had sustained, and to order the carriers to make reparation. After hearings the commission, by order of February 11, 1929, and supplemental order of March 11

in the same year, found that the carriers' tariff rates had been, were, and for the future would be, unreasonable to an extent indicated, prescribed as reasonable lower rates to be established for the future, and found that complainants including respondent, having paid excessive charges, had suffered damages and were entitled to reparation to the extent of the difference between amounts paid and what the charges would have been under the rates that the commission then found reasonable. .

On demand of the respondent, made in accordance with the commission's rules of practice,[1] the Missouri Pacific before April 20, 1929, paid it $23,994.33, being the amounts directed to be paid by the reparation order on account of shipments for which the Missouri Pacific, delivering carrier, had collected the charges. After denial of a number of petitions for rehearing filed by the Missouri Pacific and other carriers, the commission, November 2, 1931, reopened the case. July 3, 1933, after hearings and protracted contest, it found the rates that it had theretofore condemned were not unreasonable and set aside all findings and orders that it had made, including the reparation order on which respondent had collected.

October 30, 1934, petitioners, who had been appointed trustees of the Missouri Pacific, asked respondent to refund the amount it had received; respondent refused. To recover with interest the amount the Missouri Pacific paid, petitioners brought this suit in a circuit court of Missouri; it gave judgment for respondent. The supreme court affirmed. It held that, as the Missouri Pacific had paid the amount of the reparation award with full knowledge of the facts without denying liability or waiting to be sued, the payment was a voluntary one and that therefore petitioners were not entitled to recover. The court

---

. [1] The applicable rule is V: Reparation Statements—Formal Claims for Reparation Based Upon Findings of the Commission. See Rules of Practice Before the Commission, revised to April 1, 1936.

also held that by the voluntary payment the Missouri Pacific caused respondent to believe that the matter was a closed transaction and that in the circumstances, to which reference will later be made, it would be inequitable to require respondent to refund.

We think that petitioners are entitled to recover.

1. In absence of prior finding by the commission that the tariff charges collected for interstate transportation are unreasonable, there can be no enforceable claim for damages caused by exactions according to the tariff. *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 444. *Robinson* v. *Baltimore & Ohio R. Co.*, 222 U. S. 506, 510. *Mitchell Coal Co.* v. *Pennsylvania R. Co.*, 230 U. S. 247, 259. And see *Lewis-Simas-Jones Co.* v. *Southern Pacific R. Co.*, 283 U. S. 654, 661; *Baltimore & Ohio R. Co.* v. *Brady*, 288 U. S. 448, 458. Prior to the findings and orders of the commission, February 11 and March 11, 1929, respondent was not permitted to collect, nor was the Missouri Pacific or other carriers allowed to pay, the damages claimed by respondent. But when the commission made the findings and reparation orders, the carriers, in the absence of facts constituting a defense, were in duty bound to pay in accordance with the orders.

Section 16 (1)[2] provides that if the commission shall determine complainant entitled to an award of damages, it shall direct the carrier to pay complainant the sum to which he is found entitled within a specified time. Section 16 (2)[3] declares that if the carrier does not comply

---

[2] "If, after hearing on a complaint made as provided in section 13 of this chapter, the commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter for a violation thereof, the commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named." 49 U. S. C. § 16 (1).

[3] "If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in

within the time limit, complainant may bring suit setting forth the causes for which he claims damages. It also declares that, in claimants' suits in federal courts, the findings and order of the commission shall be prima facie evidence of the facts therein stated. It allows plaintiffs, if they prevail, to recover reasonable attorneys' fees. By thus laying on the carriers the burden of bringing forward evidence to overcome presumptions created against them, and by compelling them, if defeated, to pay plaintiffs' attorneys' fees in addition to the interest allowed by law, the Act unmistakably evidences purpose directly to prevent interposition of pleas lacking merit and so coercively to bring about prompt payment of the commission's awards. In *Meeker & Co.* v. *Lehigh Valley R. Co.*, 236 U. S. 412, this Court, upholding the clause as to attorneys' fees, said (p. 433): "The provision is leveled against common carriers engaged in interstate commerce, a *quasi* public business, and is confined to cases wherein a recovery is had for damages resulting from the carrier's violation of some duty imposed in the public interest by the Act to Regulate Commerce. . . . One of its purposes is to promote a closer observance by carriers of the duties so imposed; and that there is also a purpose to

---

the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, or in any State court of general jurisdiction having jurisdiction of the parties, a petition setting forth briefly the causes for which he claims damages, and the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings unless they accrue upon his appeal. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 49 U. S. C. § 16 (2).

encourage the payment, without suit, of just demands does not militate against its validity. And in *St. Louis & S. F. R. Co.* v. *Spiller,* 275 U. S. 156, referring to the same provision, we said (p. 159): "The purpose of Congress in making the provision concerning costs was to discourage harassing resistance by a carrier to a reparation order."

There is nothing in the record to indicate, nor is it suggested by respondent or in the state court's opinion, that the Missouri Pacific had any defense against respondent's claim under the findings and reparation order. The liability so established persisted until payment of the claim. It may not reasonably be held that the Missouri Pacific was bound to await suit or delay adjudication by false or frivolous answer while expenses of litigation, interest, and fees for its adversary's counsel accumulated. Sections 16 (1) and 16 (2) indicate legislative purpose to penalize failure of carriers, having no defense, to pay damages in accordance with the terms of the commission's findings and reparation orders.

But by § 16a,[4] the commission was empowered to set aside its orders. That section was drafted by the com-

---

[4] "After a decision, order, or requirement has been made by the commission in any proceeding any party thereto may at any time make application for rehearing of the same, or any matter determined therein, and it shall be lawful for the commission in its discretion to grant such a rehearing if sufficient reason therefor be made to appear. Applications for rehearing shall be governed by such general rules as the commission may establish. No such application shall excuse any carrier from complying with or obeying any decision, order, or requirement of the commission, or operate in any manner to stay or postpone the enforcement thereof, without the special order of the commission. In case a rehearing is granted the proceedings thereupon shall conform as nearly as may be to the proceedings in an original hearing, except as the commission may otherwise direct; and if, in its judgment, after such rehearing and the consideration of all facts, including those arising since the former hearing, it shall appear that the original decision, order, or require-.

mission at the request of the Senate Committee on Interstate Commerce and was added by the Hepburn Act of 1906. It was "a new section . . . which expressly authorizes the commission to review and modify its own decisions."[5] It was expounded by the commission as "intended to give the commission a right to rehear a matter for the purpose of correcting any injustice in a previous order." Cattle Raisers' Assn. v. Missouri, K. & T. Ry. Co., 12 I. C. C. 1, 3. While careful to prevent applications for rehearing from being used to avoid or delay compliance with the commission's orders, it empowers the commission at any time to grant rehearings as to any decision, order, or requirement and to reverse, change, or modify the same. Respondent made its demand and collected the money subject to the authority of the commission to set aside the order which authorized payment of the same.

The clauses of § 16a that authorize the commission to consider facts arising after the former hearing and that make its decisions after rehearing subject to the same provisions as an original order manifest the purpose of the Act to require carriers to serve for, and the shippers to pay, the lawful tariff rates. The Act condemns every deviation from lawful tariff rates. It declares that no carrier may lawfully collect a greater or less or different compensation for transportation than the rates specified in the tariff filed nor refund or remit any portion of the rates so specified. § 6 (7); see also § 10 (2). Similarly, it condemns the obtaining of transportation for less than

---

ment is in any respect unjust or unwarranted, the commission may reverse, change, or modify the same accordingly. Any decision, order, or requirement made after such rehearing, reversing, changing, or modifying the original determination shall be subject to the same provisions as an original order." 49 U. S. C. § 16a.

[5] Nineteenth Annual Report of the Interstate Commerce Commission, p. 12.

the legally established rate. See § 10 (3) and (4). Involuntary rebates as well as those that are voluntary are prohibited. *Lowden* v. *Simonds-Shields-Lonsdale Grain Co.*, 306 U. S. 516. *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Fink*, 250 U. S. 577, 582. *New York Central & H. R. R. Co.* v. *York & Whitney Co.*, 256 U. S. 406. By accepting delivery of the coal, respondent became bound to pay the tariff charges. As the commission has found them not unreasonable but lawful, respondent is without right to retain the amount it collected upon the claim that they were excessive.

The retention by respondent of money collected under the findings and order that the commission later set aside and vacated clearly would be repugnant to the policy and provisions of the Act.

2. The facts on which the state court held it would be inequitable to require respondent to refund may be briefly stated. Respondent employed an expert to represent it before the commission and promised to pay him one-half the amount recovered as reparation. Upon collection, it promptly paid as agreed. When petitioners asked refund, more than five years had elapsed and suit to recover back the fee was barred by the statute of limitations. Respondent used the other half to pay dividends and for other corporate purposes. As above indicated, the court held the payment to be voluntary and rested its ruling on that fact. But as shown above it was not voluntary; it was demanded by respondent and compelled by the Act, findings, and reparation order. Moreover, equitable considerations may not serve to justify failure of carrier to collect, or retention by shipper of, any part of lawful tariff charges. *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Fink, supra. New York Central & H. R. R. Co.* v. *York & Whitney Co., supra.*

*Reversed.*