BROUGHTON et al. v. ATLANTIC CO.
CARTHAN et al. v. SAME.

Civil Actions Nos. 2556, 2562.

District Court, N. D. Georgia,
Atlanta Division.

Feb. 28, 1944.

See also 47 F.Supp. 850.

Homer C. Denton and Richard E. Cotton, both of Atlanta, Ga., for plaintiffs.

C. L. Henry, W. K. Meadow, and Spalding, Sibley & Troutman, all of Atlanta, Ga., for defendant.

RUSSELL, District Judge.

The question in this case involves the validity and effect to be given to agreements of accord and satisfaction which are relied upon by the defendant as a defense to the suit of such employees seeking to recover unpaid minimum wages and overtime compensation under the terms of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. In the progress of the cause in response to a motion for production of time records, defendant offered to present a calculation which had lately been made as to the amount of recovery plaintiffs were entitled to obtain in the event the defense of accord and satisfaction was not legally established, and upon the filing of the calculation, plaintiffs moved to dismiss the defense and for summary judgment. The motion was overruled, the court preferring to retain the cause until the circumstances surrounding the execution of the agreements could be ascertained by trial, and also at that time being inclined to the view that the terms of the Fair Labor Standards Act did not prevent the settlement of a bona fide dispute as to the coverage and the amount due for past employment. Experience had shown that by failure of some employers to keep satisfactory time records, employees had in some suits been deprived of any recovery and it could not be determined that settlement of a dispute

was not in the best interest of the employee in some instances. At the close of the evidence both parties moved for the direction of a verdict in their favor. The plaintiffs contended that the defendant had failed to sustain the validity of its plea of accord and satisfaction and that no defense was proven by any competent evidence, and further, that as it appeared from the books of the defendant that the settlement was for a lesser amount in each instance than the amount due to the several plaintiffs, and this knowledge being accessible to and in possession of the defendant at the time the agreements were executed, there could have been no bona fide doubt by defendant of the amount due and unpaid. The defendant contended that the evidence demanded a finding that there was a bona fide dispute both as to the law and facts at the time the accord was executed, and that therefore the agreements were valid and enforceable and barred plaintiffs right of recovery. Tne ruling upon both motions was reserved and the case submitted to the jury for determination of the question of whether there was in fact a bona fide dispute between the parties, and with an instruction that no release or agreement entered into with a view by either party of evading the requirements of the Act, would defeat recovery by the plaintiffs of any amount to which they might be shown to be entitled under the statute. The jury was unable to agree and a mistrial was declared and both parties renew their motion for judgment.

Upon consideration of this case three primary questions are presented:

1. Is an agreement of accord and satisfaction sufficient to bar the maintenance of an action for unpaid minimum wages and overtime compensation due under the terms of the Fair Labor Standards Act in the absence of any attack thereon except as being violative of the plain requirements of the statute?

2. If not sufficient as a defense in and of itself, what is the proper scope of evidence to show the existence or absence of a bona fide dispute as recited in the agreement, and is the determination of the question of a good faith dispute as to a question of law proper to be submitted to the jury for determination?

3. Is the statutory requirement of the payment of minimum wages and overtime compensation so affected with a public interest and so essential in executing the congressional policy evidenced by the statute, that proof of the existence of a bona fide dispute as to law and facts, or as to law or facts, sufficient to render improper the processes of the court to an employee who is able to establish that notwithstanding the execution of such agreements, he has not received compensation required to be paid, in other words, in the trial of such a case does proof of the existence of a bona fide dispute at the time of the execution of the agreement, preclude recovery by the employee of an amount subsequently discovered and admitted to be due under the terms of the statute?

■ As to the first proposition, in view of the nature of the subject matter concerned and the legislative intent evidenced by the statute, an agreement of accord and satisfaction does not without more afford an effective defense to an employee's suit. As has been well recognized, the rights provided to the employee are not his alone but are affected with a public interest and they may not be waived or renounced either before or after they become due. Fleming v. Warshawsky, 7 Cir., 123 F.2d 622, 626; United States ex rel. Johnson v. Morley Construction Co., 2 Cir., 98 F.2d 781, 789; Travis v. Ray, D.C., 41 F.Supp. 6, 8; Cudahy Packing Company of Alabama v. Bazanos, Ala.Sup., 15 So.2d 720; Guess v. Montague, 4 Cir., 140 F.2d 500. Certainly standing alone and without aliunde proof of its terms, such agreement has no greater validity than a release or settlement. Such instruments have been uniformly declared insufficient to present a defense. See cases just cited. This is not challenged by the defendant. It relied upon the existence of a bona fide dispute both as to coverage and as to the number of hours worked to support the agreements.

■ As to the second proposition, manifestly it is proper that evidence be received as to all of the circumstances surrounding the execution of the agreement. Otherwise there would be no question for the jury's determination. Thus may be presented at the trial the true facts concerning the nature of employment, the time worked, compensation received, and amount due; for the employee is not restricted to proof of such items as fraud in inducement or execution of the agreement. Thus certainly evidence is and should be permissible to contradict the terms of the writing, for otherwise the writing itself would present a defense. The result is that,

the writing alone being insufficient as a conclusive defense, when the evidence is developed the question of whether compliance with the statute has been had arises contemporaneously with the question of whether the agreement was executed in settlement of a bona fide dispute.

In these circumstances, when it appears that the wages specified by the statute are actually due, should the employee be forced, as a result of having executed an agreement, to the hazard of the unpredictable determination by the jury that there was no bona fide dispute and thus he is entitled to recover, or else a determination that though not compensated, there did exist a bona fide dispute which bars recovery of the proven unpaid wages?

The writing itself is not a conclusive defense, and in any trial of the question, if it appears that the payment was not that required by the statute, such an agreement, even if it was at the time a settlement of a bona fide dispute, does not debar an employee who can show that he has not been paid as prescribed by the statute from maintaining a suit for recovery of the amount to which he is entitled. In view of the subject matter of the agreement and the congressional command that the prescribed minimum wages and overtime compensation shall be paid, the parties may no more reach a different result by a writing and agreement of accord and satisfaction than they can by a waiver, release or other agreement. Under this Act the courts will permit a full investigation, and if it appears in such a proceeding that the employee has not received the minimum wage provided by the statute, it is the duty of the court to enforce payment in accordance with its terms.

Some general observations applicable to each of the questions above may be in order. "The wages were specified for him by the statute." Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583, 62 S.Ct. 1216, 1223, 86 L.Ed. 1682. Even the good faith of the employer in believing the employment not covered is insufficient as a defense. Missel v. Overnight Transp. Co., 4 Cir., 126 F.2d 98, 110. If good faith is not a defense to a suit, it is apparent that it could not afford a basis for a good faith dispute so as to support an agreement of accord and satisfaction. Furthermore, it is not the intent of the statute that a wage claim arising thereunder shall be settled by the determination of the jury on the question of good faith of the employer (and it might be said of the employee) arising out of the question of whether such employer or employee thought the law applicable, for otherwise what the parties might induce the jury to find they believed would be permitted to override what the law really was, and thus in a case in which application of the statute was required the law could be avoided by the determination of the question of fact as to what the parties actually in good faith believed. Such a result is anomalous in a case where statutory wages are set as a matter of national public policy. If the existence of a good faith dispute may be permitted to defeat a claim of an employee who has not been actually compensated as required by the statute, the effect of the rulings in the Missel cases, supra, that good faith is not a defense in a wage action, could be easily avoided. Numerous decisions, some of which are cited above, recognize the underlying principle that payment in full of at least the statutory stipulated wages is essential to provide a binding discharge from such liability.

Counsel for defendant relies upon the decision by the Court of Appeals of Georgia in David v. Atlantic Company, 69 Ga. App. 643, 26 S.E.2d 650, dealing with an agreement in form identical with those now under consideration. However the question determined by that court did not arise in the same manner as in the present case as the case was submitted in the trial court upon a stipulation disclosing facts somewhat different from those here involved. If it be not distinguishable, with due deference and respect for that court, in passing upon the effect of a Federal statute, this court has an independent responsibility, and if that case is properly construed as dealing with the questions now presented, it can not be followed in determining a matter of Federal law. However if I am incorrect in my view that the Federal statute affects the relations of employer and employee in interstate commerce with a public interest, so as to remove agreements between them from the pale of general contract law, the decision in the David case is manifestly correct and is amply supported by the authorities there cited. For the reasons stated I do not think these principles applicable in a case such as the present.

188

While analogies are sometimes dangerous, in view of the construction given to and application of the terms of the Fair Labor Standards Act by the vast majority of the courts, there is no practical difference between a claim for compensation to the extent required by the statute and the rule well established over a period of years with respect to railroad interstate tariffs and rates, as to the supremacy of the rate prescribed by statute to any rate or result fixed or sought to be enforced as a result of contract or agreements. It is said as to these that "the great purpose of the act to regulate commerce * * * was to secure equality of rates as to all, and to destroy favoritism." New York, New Haven & Hartford R. Co. v. Interstate Commerce Commission, 200 U.S. 361, 391, 26 S.Ct. 272, 277, 50 L.Ed. 515. It is likewise one of the main purposes of the Fair Labor Standards Act to require uniformly payment of not less than the minimum wages to those employed in commerce, for one of the impelling forces behind the statute is the effort to promote economic stability through increased purchasing power and the removal of substandard labor conditions. Missel v. Overnight Transp. Co., supra. It is well established that neither equitable considerations, nor any contract, nor the principle of estoppel can authorize a failure of the carrier to collect, or retention by the shipper of, any part of the lawful carrier charges. Baldwin v. Scott County Milling Company, 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409; New York Cent. & H. R. R. Co. v. York & Whitney Co., 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016; Pittsburgh, C. C. & St. L. R. Co., 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; Texas & P. R. Co. v. Mugg & Dryden, 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011; Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A.1915E, 665, and citations. The ruling in these transportation cases appears to be bottomed upon the proposition that the shipper is conclusively presumed to know the lawful rate. There appears no reason why the same presumption should not be invoked against the employer and employee, at least to the extent of opening any agreement to inquiry, and if upon such investigation it is determined that the law has not been complied with, to so adjudicate and require the payment of at least the minimum wage which the statute has prescribed as a necessary element of the plan to protect interstate commerce.

It follows that the several plaintiffs are entitled to judgment for the amount shown. to be due together with an equal amount as liquidated damages, and an appropriate judgment therefor may be presented.