**McDUFFEE MOTOR FREIGHT, INC., Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents,**

and

**Bronaugh Motor Express, Inc., Intervening Respondent.**

No. 75–1735.

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1976.

Decided Nov. 3, 1976.

Gerald C. Simon, Fischer, Franklin & Ford, Rex Eames, Eames, Petrello & Wilcox, Detroit, Mich., for petitioner.

Raymond Michael Ripple, Fritz R. Kahn, I.C.C., Washington, D. C., for I.C.C.

John H. D. Wigger, Dept. of Justice, Washington, D. C., for the U. S.

Angus W. McDonald, McDonald, Alford & Roszell, Lexington, Ky., John M. Nader, Bowling Green, Ky., for intervening respondent.

Before CELEBREZZE, PECK and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This matter is before the court on the petition of McDuffee Motor Freight, Inc. to review two orders entered on December 26, 1974 and May 12, 1975 [1] by Division III of the Interstate Commerce Commission.

On December 31, 1969, a contract was executed between McDuffee and Bronaugh Motor Express, Inc., both common carriers, for the sale of a portion of McDuffee's operating authority to transport certain commodities between designated points in Kentucky. The transfer was subject to the approval of the Interstate Commerce Commission, 49 U.S.C. § 5(2)(b), and under the terms of the contract the parties were to cooperate in making the necessary applications to the Interstate Commerce Commission, and in obtaining temporary authority pending final approval. The contract provided in part that:

> In the event that the Interstate Commerce Commission were to make minor modifications in the authority to be acquired by Vendee or in the authority being sought by Vendor in the Public Convenience and Necessity Application, then the parties shall have the right to meet and discuss such minor modifications and decide mutually whether to consummate the transaction. However, in that event there will have to be an agreement by both parties in order to consummate the sale.

Although the facts and the series of orders issued by the I.C.C. are more compli-

---

1. The order entered on May 12, 1975 was the Commission's denial of McDuffee's petition for reconsideration of the December 26 order. Consequently, only the validity of the order entered on December 26 is before us now.

cated than the following summary suggests, for the purposes of our review we need only focus on an abridged chronology of the events.

Division III of the I.C.C. adopted on October 12, 1972 the hearing officer's decision to authorize the purchase by Bronaugh of the designated portion of McDuffee's operating rights. However, on June 29, 1973 the Division on its own motion reopened the proceedings and made a finding that the proposed purchase would eliminate an existing through service between Knoxville, Tennessee and Corbin, Kentucky. Subsequently, Bronaugh applied for the authority to provide the direct service between Knoxville and Corbin. The Division, in an order of July 26, 1973, had separated the proceedings of Bronaugh to apply for the operating authority from its approval of the purchase transaction. Upon petition and argument of McDuffee the Division issued a final order on November 5, 1973 reaffirming its order of July 26.

On November 16, 1973, McDuffee in a letter advised Bronaugh that it would not consummate the transaction because in McDuffee's opinion the actions of the Commission were not contemplated by either of the parties to the contract. Bronaugh then brought an action in the Fayette Circuit Court in Lexington, Kentucky, requesting specific performance of the contract and damages.

According to McDuffee, Bronaugh, in order to fortify its legal position in the state court proceedings, then filed a petition with the Commission seeking clarification of its prior orders and specifically "that the final and last Order in this proceeding is NOT conditional in any way and grants absolute approval of this transaction, without regard to resolution of any issues or questions regarding the future service between Knoxville, Tennessee and Corbin, Kentucky." The order of December 26, 1974 granted Bronaugh's petition for clarification essentially as prayed. It is the claim of McDuffee that the issuance of this order by the Commission was in excess of the Commission's statutory authority and beyond its

jurisdiction "as constituting an arbitrary and capricious intrusion into the issues of fact and/or law that are within the exclusive jurisdiction of the state court in Lexington, Ky." McDuffee, however, expressly concedes the validity of all prior orders of the Commission, including the order which the challenged order allegedly clarified.

As a preliminary matter, the Commission contends that this court lacks jurisdiction to review the order of December 26, 1974 because it is not a "final order" within the meaning of 28 U.S.C. §§ 2321 and 2342(5).

"It is the position of the Government that these clarification orders are an extension of its Section 5 authorization and are permissive in nature, do not in fact order any action by either Bronaugh or McDuffee, and do not directly change the status of any party either in relation to the Commission or to each other." Brief for I.C.C. at 11

The government characterizes the issue as "essentially a question of ripeness", citing *National Van Lines, Inc. v. United States*, 326 F.2d 362, 372 (7th Cir. 1964). We view this argument as essentially an attempt to revive the old distinction between "negative" and "affirmative" orders, a distinction which was abolished by the Supreme Court in 1939:

"We conclude, therefore, that any distinction, as such, between negative and affirmative orders, as a touchstone of jurisdiction to review the Commission's orders, serves no useful purpose, and insofar as earlier decisions have been controlled by this distinction, they can no longer be guiding." *Rochester Telephone Corp. v. United States*, 307 U.S. 125, 143, 59 S.Ct. 754, 764, 83 L.Ed. 1147 (1939)

*See also Frozen Food Express v. United States*, 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 730 (1956); *Chicago Junction Case*, 264 U.S. 258, 263–4, 44 S.Ct. 317, 68 L.Ed. 667 (1924). In *Pennsylvania Railroad Co. v. United States*, 363 U.S. 202, 204, 80 S.Ct. 1131, 1132, 4 L.Ed.2d 1165 (1960), the government contended that "the order of the Commission did not require anything to be done or not done, that it was therefore an advisory

opinion only". The Supreme Court responded that the real question is whether the order had legal consequences:

"[W]hile a mere 'abstract declaration' on some issue by the Commission may not be judicially reviewable, an order that determines a 'right or obligation' so that 'legal consequences' will flow from it is reviewable." 363 U.S. at 205, 80 S.Ct. at 1133.

See also Port of Boston Marine Terminal v. Rederi Transatlantic, 400 U.S. 62, 70–71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970):

"But [the] argument that the order lacked finality because it had no independent effect on anyone and resembled an interlocutory court order denying a motion to dismiss a complaint has the hollow ring of another era. Agency orders that have no independent coercive effect are common."

We find the application of the ripeness doctrine to the facts of this case unsatisfactory, at least to the extent that the I.C.C.'s position is that it can preclude a court of appeals from exercising its power of review by labeling an order a clarification where that order in fact amounts to a new determination of the rights of the parties.

As we noted above McDuffee does not now and has not challenged the original orders which the order of December 26 purported to clarify. It apparently also does not challenge the grant of authority to the Interstate Commerce Commission to generally change or modify its prior orders. 49 U.S.C. §§ 16(6) and 17(7). It objects because, it claims, the issuance of the clarification order constitutes an impermissible interference with the interpretation of the contract between the parties, a matter which is solely within the domain of the state court in Lexington.

■ It is clear that 49 U.S.C. §§ 16(6) and 17(7) authorize the Commission to modify or change its orders. The Court in *Baltimore & O. R.R. v. United States,* 386 U.S. 372, 387, 87 S.Ct. 1100, 1108, 18 L.Ed.2d 159 (1967) stated:

"Once a valid order is entered by the Commission, it, of course, has the power to retain jurisdiction for the purpose of making modifications that it finds necessary in the light of subsequent circumstances or to assist in compliance with prior conditions previously required or, of course, to correct any errors."

See also American Farm Lines v. Black Ball, 397 U.S. 532, 540–41, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); Baldwin v. Scott County Milling Co., 307 U.S. 478, 483–84, 59 S.Ct. 943, 83 L.Ed. 1409 (1939).

McDuffee is, of course, correct in its position that the I.C.C. is completely without power to enforce any provision of the contract between Bronaugh and McDuffee or to interfere with state court proceedings in which the interpretation of that contract may be involved. The I.C.C. similarly had sought to make clear its position that it makes no pretense to such rights.

"Nor has the ICC, in its interpretation of section 5(2), found any such hidden authority. It looks upon its duties as purely permissive, approving with appropriate conditions contracts, agreements, and consolidations which are negotiated by the parties under the normally applicable law governing such transactions in other fields. As the Commission has often held, it has no power to compel a carrier to undertake a section 5(2) transaction . . . Further, it has been unwilling to take upon itself questions of either the interpretation or enforceability of contracts submitted with respect to a transaction." *Texas & N.O. R.R. Co. v. Brotherhood of Railroad Trainmen,* 307 F.2d 151, 159 (5th Cir. 1962), cert. denied, 371 U.S. 952, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963).

Accord, Watson Bros. Transp. Co. v. Jaffa, 143 F.2d 340 (8th Cir. 1944); Walker v. United States, 208 F.Supp. 388 (W.D.Tex. 1962), aff'd., 372 U.S. 526, 83 S.Ct. 887, 9 L.Ed.2d 965 (1963); McGary Transportation Co.-Purchase (Portion)-Albert J. Demelle, 50 MCC 608, 611 (1948).

■ Our reading of the challenged order of December 26, 1974 does not disclose an attempt by the Commission to divest the state court of its jurisdiction. It may be true that Bronaugh's petition for an order

of clarification was motivated by a desire that the Commission would issue an order which the state court *might* regard as highly persuasive on the pending issue of whether the I.C.C. had imposed some modifications on the transaction as to void the contract.

However, we still do not see the order entered as being beyond the power of the Commission, nor in violation of its authority under the statute. If the Commission did intend to influence the state court judge, we have no doubt that that circumstance will be properly taken into account by the state judge who is in any event not bound by the I.C.C.'s interpretation of the contract or, indeed, by the Commission's subsequent interpretation of its own order. *Texas & N.O. R.R. v. Brotherhood of Railroad Trainmen, supra.*

If Bronaugh was motivated by a desire for tactical advantage in seeking the clarification order from the Commission, McDuffee appears equally interested in getting an opposite tactical advantage in the use of the instant petition for review. Obviously this is not a sufficient basis for disturbing the challenged orders.

The petition to set aside the orders of the Commission is denied.