AERO TRUCKING, INC.,
Plaintiff-Appellee,

v.

REGAL TUBE COMPANY, Defendant and Third Party Plaintiff-Appellant,

v.

William CRUM, Third Party Defendant-Appellee.

No. 78–1901.

United States Court of Appeals, Seventh Circuit.

Heard Dec. 8, 1978.

Decided March 14, 1979.

James G. Hunter, Jr., Chicago, Ill., for defendant and third-party plaintiff-appellant.

Daniel Galatzer, Joel Steiner, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, LAY * and PELL, Circuit Judges.

LAY, Circuit Judge.

Aero Trucking, an interstate motor freight carrier, brought suit against Regal Tube, a manufacturer and shipper of steel tubing, for the recovery of certain tariff charges arising out of Aero's transportation of steel tubing. Regal Tube impleaded as a third party defendant William Crum, the terminal manager for Aero. Aero carried steel tubing for Regal from May through August of 1976. During this period Regal detained Aero's trucks over 100 times. Aero billed Regal $9,398 for detention time. Regal paid Aero all transportation charges

---

* The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, is sitting by designation.

except the detention charges. Aero thereafter brought suit to recover these charges.

Regal asserted in the district court that Aero was estopped from making claim for detention charges under the tariff on the ground that Aero, through its terminal manager Crum, had fraudulently misrepresented prior to the shipment that *no* detention charges would be assessed to Regal in connection with the transportation charges. At the time the alleged misrepresentation was made, unknown to Regal, Aero had on file with the Interstate Commerce Commission certain tariffs which required detention charges to be imposed on the shipper if Aero trucks were detained beyond a prescribed "free time." The third party complaint sought recovery against Crum on the basis that if Regal was liable to Aero then Crum was liable to Regal.

The trial court held that under 49 U.S.C. § 317(b) a common carrier must charge all shippers the same rates as specified in the tariffs and therefore estoppel was not available to Regal on the facts presented. Accordingly, the trial court granted Aero's motion for summary judgment. The trial court also granted Crum's motion for summary judgment on the ground that the employee of a carrier may not be held liable for the inaccurate quotations alleged.

We affirm.

Section 217 of the Motor Carrier Act, 49 U.S.C. § 317, provides in pertinent part:

No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation *or for any service in connection therewith* between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent or broker or otherwise, any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs.

(Emphasis added.)

The obvious and long-recognized purpose underlying this section is to prevent tariff rate discrimination. *See Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink*, 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151 (1919); *Consolidated Freightways Corp. v. Forty-Eight Insulations, Inc.*, 501 F.2d 1400, 1402 (7th Cir. 1974); *Southern Pacific Transportation Co. v. Campbell Soup Co.*, 455 F.2d 1219, 1221 (8th Cir. 1972); *Consolidated Freightways Corp. v. Admiral Corp.*, 442 F.2d 56, 61 (7th Cir. 1971). In accordance with this policy and the stringent language of the Act it has long been held that properly published tariffs are incorporated into any agreement between the shipper and carrier. *See Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink*, 250 U.S. at 581–82, 40 S.Ct. 27; *Consolidated Freightways Corp. v. Forty-Eight Insulations, Inc.*, 501 F.2d at 1401 n. 2; *Eastern Motor Express, Inc. v. A. Maschmeijer, Jr., Inc.*, 247 F.2d 826, 828 (2d Cir. 1957), *cert. denied*, 355 U.S. 959, 78 S.Ct. 535, 2 L.Ed.2d 534 (1958). As stated by the Supreme Court, "[the shipper], as well as the carrier, must be presumed to know the law, and to have understood that the rate charged could lawfully be only the one fixed by the tariff." *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink*, 250 U.S. at 581, 40 S.Ct. at 28. Thus, carriers who sue to recover the full tariff rate after mistakenly undercharging the shipper cannot be estopped from asserting the correct rate on the basis of their prior representations to the shipper that the rate was lower.

Regal initially attempts to distinguish this case from the undercharge cases by asserting that the undercharge cases dealt with transportation charges while the instant case deals with "an *unnecessary* additional charge that *could and would have been avoided* in connection with these shipments but for appellees' fraud in the inducement." We find the alleged factual difference clearly insufficient. The Motor

Carrier Act treats "compensation for transportation *or for any service in connection therewith*" precisely the same. 49 U.S.C. § 317(b) (emphasis added). When a carrier waits at the shipper's loading dock it performs a service in connection with the transportation of the shipper's goods.

Regal also argues the undercharge cases do not control the resolution of this appeal since Aero has committed the type of discrimination which the undercharge cases condemned. According to Regal, Aero's fraudulent statements induced Regal to incur unnecessary detention charges. It is urged that this conduct discriminated against and disadvantaged Regal since other shippers were not given fraudulent information concerning detention charges and therefore were able to alter their operations in order to avoid unnecessary delays in loading. We reject this contention.

■ The type of discrimination alleged by Regal in this case is always present in underquotation situations.[1] If a shipper has knowledge that the actual tariff is greater than the one quoted by the carrier it may well decide to alter its business operations in order to compensate for the higher rate. *See, e. g., Pettibone v. Richardson*, 126 F.2d 969 (7th Cir. 1942). Regal argues, however, that it reasonably relied on Aero's fraudulent understatement of the detention charges. The short answer to this contention is, as it is in all undercharge cases, that the applicable tariffs are by law incorporated into the contract between shipper and carrier. Since the shipper is presumed to have knowledge of the applicable tariff rates, Regal cannot rely on Aero's statement that no detention charges would be assessed. As stated by the Supreme Court:

> The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.

*Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922).

We therefore find that Regal is liable to Aero for the assessed detention charges, and accordingly affirm the district court's order granting Aero's motion for summary judgment.

■ We likewise affirm the district court's order granting Crum's motion for summary judgment of the third party complaint. Although Regal sues Crum as an individual rather than as an agent of Aero, the claim cannot stand. The third party complaint contains four counts which allege separate bases for Crum's liability to Regal. Each count, however, states that Regal was damaged by its *reliance* on Crum's repre-

---

1. In support of its argument, Regal relies heavily upon this court's decision in *Consolidated Freightways Corp. v. Admiral Corp.*, 442 F.2d 56 (7th Cir. 1971) (Swygert, J., dissenting). In that case this court held equitable estoppel may be invoked as a bar to collection of tariffs if preventing recovery by the carrier does not conflict with the statutory policy to curb discriminatory treatment of shippers. *Id.* at 62. Although nothing in our decision today detracts from that holding, we find Regal's reliance on *Consolidated Freightways* to be misplaced. The consignee in that case paid the proper tariff charges to the consignor pursuant to bills of lading received from the carrier which were marked "prepaid." When the carrier was unable to collect from the consignor, it brought an action to recover the tariff from the consignee. In determining whether estoppel could ever be consistent with the Act, we noted that "[s]o long as payment of the *full tariff charges* may be demanded from some party, the anti-discrimination policy of the Section is satisfied." *Id.* at 62 (emphasis added). The facts present in that case, namely, the consignee's reasonable reliance on the bills of lading marked "prepaid," the consignee's full payment of all tariff charges to the consignor, and the carrier's illegal extension of credit to the consignor which resulted in its inability to collect from the consignor, led this court to conclude that requiring the consignee to pay twice for services received would not further the purposes of the Act nor be equitable in light of the carrier's illegal conduct. Our decision in *Consolidated Freightways*, however, contains no intimation that equitable considerations may affect the amount of tariff charges due. Indeed, our decision reaffirmed and was entirely consistent with the Act's purpose of enforcing rate uniformity.

sentations that no detention charges would be assessed. As previously discussed, Regal is conclusively presumed to know the tariff rate. *See Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink*, 250 U.S. at 581, 40 S.Ct. 27. Accordingly, no suit can be predicated upon Regal's reliance on Crum's erroneous statements regarding the tariff rates. *See F. Burkhart Mfg. Co. v. Fort Worth & D.C. Ry. Co.*, 149 F.2d 909, 910 (8th Cir. 1945); *Roy Stone Transfer Corp. v. CTI–Container Transport International, Inc.*, 1976 Fed.Carr.Cas. ¶ 82,582 (S.D. N.Y. Dec. 22, 1975).

The judgment is affirmed.