**WESTERN TRANSPORTATION COM-PANY, Debtor in Possession, Plaintiff-Appellant,**

v.

**WEBSTER CITY IRON & METAL CO., INC., Defendant-Appellee.**

No. 80–2312.

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1981.

Decided Aug. 12, 1981.

Abraham A. Diamond, Abraham A. Diamond, Ltd., Chicago, Ill., for plaintiff-appellant.

James C. Hardman, Law Office of James C. Hardman, Chicago, Ill., for defendant-appellee.

Before BAUER, Circuit Judge, PECK,[*] Senior Circuit Judge, and CUDAHY, Circuit Judge.

PECK, Senior Circuit Judge.

This case presents two issues for review. First, whether a shipper of scrap metal, Webster City Iron & Metal Co., Inc., was entitled to ship at the tariff rate provided by ICC MWB 201–B, Item 4540, even though Webster failed to endorse pertinent bills of lading with the notation required by Item 578(1) of Tariff ICC MWB 125–D, a prerequisite for application of Item 4540. Second, in the event that Webster was not entitled to the tariff provided by MWB 201–B, thus making a higher tariff applicable, whether the carrier, Western Transportation Co., may raise for the first time on appeal the issue whether Section 11(e) of the Bankruptcy Act, 11 U.S.C. § 29(e), applies to extend the statute of limitations applicable to Western's action to recover additional charges. For the reasons stated below, we conclude that the shipper Webster failed to endorse the bills of lading as required for the application of ICC MWB 201–B, Item 4540, and is therefore liable for additional charges reflecting the difference between that tariff and the tariff applicable in the absence of Item 4540. However, we conclude that the failure of carrier Western to raise the issue in the district court of the applicability of the Bankruptcy Act precludes consideration of that question on appeal.

Western carried scrap metal consigned to it by Webster. The shipping charges, or tariffs, for these shipments were determined by the Interstate Commerce Commission. The tariff in issue here, Item 4540, MWB Tariff 201–B, provided a rate for Webster's shipments subject to the condition that the cargo be loaded by the shipper and unloaded by the consignee and subject to Item 578 of Tariff ICC 125–D. Item 578(1) stated:

At the time of shipment, the consignor must endorse on the Bill of Lading and Shipping Order the notation "Consignor load and count and/or consignee must unload" the shipment, as the case may be.

Item 578(6) stated:

If the consignor fails to comply with the requirements of paragraph (1) herein, ... the rate will not apply and rates otherwise published will be assessed.

There is no dispute that all the shipments involved in this case were loaded and unloaded by the consignor and consignees, or that Western charged Webster the rate provided by Item 4540, MWB 201–B. However, Western contends that the tariff of Item 4540 was not lawfully applicable because Webster failed to endorse the bills of lading with the notation required by Item 578(1) and instead placed the notation "SWL&C" on the bills of lading.

The district court granted Webster's motion for summary judgment, concluding that the notation "SWL&C" substantially complied with the notation requirement of Item 578(1). The district court also stated that since the loading and unloading requirements of the tariff had been satisfied, "[T]he carrier has been fully compensated and would be unjustly enriched by a higher rate."

In *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir. 1979), we noted that a properly published tariff is incorporated into any agreement between a shipper and a carrier, that such a tariff is the legal rate as between those parties and

* Honorable John W. Peck, Senior Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

118

cannot be varied by them, and that each party is presumed "to know the law, and to have understood that the rate charged could lawfully be only the one fixed by the Tariff." *Id.* at 621, citing *Pittsburg, Cincinnati, Chicago & St. Louis Railway Co. v. Fink*, 250 U.S. 577, 581, 40 S.Ct. 27, 27–28, 63 L.Ed. 1151 (1919).

■ The tariff in question in this case clearly states that it will not apply and that rates otherwise published will be assessed if the consignor fails to endorse the bills of lading and shipping orders with the notation, "Consignor load and count and/or consignee must unload," "as the case may be." This then is the language incorporated into the agreement of the parties. In the face of this language, Western would in no way be unjustly enriched if a higher tariff were applicable due to a failure by Webster to endorse the bills of lading according to the terms of the agreement as provided by the tariff. "[E]quitable consideration may not serve to justify failure of [a] carrier to collect, or retention by [a] shipper of, any part of lawful tariff charges." *Baldwin v. Scott County Milling Co.*, 307 U.S. 478, 485, 59 S.Ct. 943, 948, 83 L.Ed. 1409 (1939). Thus, Webster may not obtain the benefit of the tariff provided by 201–B if Webster failed to meet the specific conditions precedent to application of that tariff.[1] Therefore, the only question properly before the district court was whether Webster failed to meet the notation requirement specified by Item 578(1).

Item 578(1) specifies that, "the consignor must endorse on the bill of lading ... the notation 'Consignor load and count and/or consignee must unload' the shipment, as the case may be." The district court concluded that this restriction should be read as requiring, at a minimum, that the consignor endorse the bill of lading either with the notation, "Consignor load and count" or, in the alternative, with the notation, "Consignee must unload." Since "SWL&C" means that the shipper (consignor) will load and count as well as weigh the cargo, the district court concluded that "SWL&C" met the minimal notation requirement.

■ The problem posed by the district court's interpretation of Item 578(1) is that it permits the notation requirement for application of MWB 201–B, Item 4540, to be met by an endorsement that is inconsistent with the actual loading and unloading requirements of that tariff, making the notation potentially misleading at worst and pointless at best. Item 4540 is applicable only when the shipment is loaded into or onto the truck by the shipper and unloaded therefrom by the consignee. Tariff MWB 201–B, LUT. A general rule of construction of documents, applicable to the construction of tariffs, is that a document subject to interpretation should be construed to avoid absurdity and in a manner that is reasonable and consistent with the purposes of the tariff.[2] The district court construed Item 578(1) to permit a notation that mentions only loading to be an endorsement acceptable to permit the application of a tariff that can only be legally applied when both loading and unloading are the responsibility of the consignor and consignee. This construction of the endorsement requirement approaches absurdity, and a more reasonable construction must be given the notation requirement of Item 578(1) if such a construction is possible.

Given the loading and unloading requirement of the tariff in question, the construction of Item 578(1) best suited to the purpose of the notation is one that accurately reflects the fact that the carrier will neither load nor unload the shipment. Consequently, Item 578(1) should be construed to require a notation that, (1) "Consignor load

1. Whether the notation requirement is so unreasonable that it should not be given effect is a question that could not properly be placed before the district court in the first instance. The reasonableness of an ICC regulation is within the primary jurisdiction of the ICC and must first be raised before that agency. *United*

*States v. Western Pac. R.R.*, 352 U.S. 59, 69, 77 S.Ct. 161, 168, 1 L.Ed.2d 126 (1956).

2. The court may construe ambiguous tariff regulations as it would any other document. *National Van Lines, Inc. v. United States*, 355 F.2d 326 (7th Cir. 1966).

and count and unload", or in the alternative, (2) "Consignor load and count and consignee unload", as the case may be. This is not only a reasonable interpretation of the language of Item 578(1), but is also the only construction of the notation requirement that is consistent with the actual handling requirements for shipments made pursuant to Item 4540 of Tariff MWB 201–B.

Since Webster's endorsements failed to indicate anything about the unloading of the cargo, those endorsements did not constitute substantial compliance with the notation requirement as properly construed. By the terms of Item 578(6), Webster's failure to meet the notation requirement of Item 578(1) prevents the application of Tariff MWB 201–B, and necessitates the application of rates otherwise published. The district court's order granting summary judgment in favor of Webster must therefore be reversed.

The parties had stipulated that certain shipments included in Western's complaint had occurred more than three years prior to the filing of that complaint, and that collection of unpaid charges for those shipments were barred by the statute of limitations on such actions, 49 U.S.C. § 11706(a). On appeal, Western, as a debtor in possession, raised for the first time the applicability of 11 U.S.C. § 29(e), contending that this section extended the period for the bringing of Western's action so that Western may recover unpaid charges for all the shipments included in Western's complaint. Western contends that the parties in making and the district court in accepting the parties' stipulation as to the statute of limitations committed an error of law, and that this Court should correct that error. We disagree.

As we have stated on previous occasions, this Court will not consider an issue of the statute of limitations that was not raised in the district court. *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1267 (7th Cir. 1978); *Ohio Casualty Ins. Co. v. Rynearson*, 507 F.2d 573 (7th Cir. 1974). While the general rule that an appellate court will not consider issues raised for the first time on appeal is not without exception, e. g., *Sgro v. United States*, 609 F.2d 1259, 1264 (7th Cir. 1979), that rule is particularly appropriate in the present case where Western has characterized the issue of the applicability of 11 U.S.C. § 29(e) as one of first impression necessitating "in depth" consideration. In such instances the requirement that a legal issue be first raised before the district court permits the district judge to expose and distill any underlying subtleties of the issue so as to facilitate a more informed consideration by the appellate court. *Terkildsen v. Waters*, 481 F.2d 201, 205 (2nd Cir. 1973).

For the reasons stated above the judgment of the district court is reversed in part and affirmed in part and the case is remanded for further proceedings consistent with this opinion.