**REBEL MOTOR FREIGHT,**
**Plaintiff–Appellee,**

v.

**MALONE & HYDE, INC.,**
**Defendant–Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

March 11, 1991.

Application for Permission to Appeal Denied by Supreme Court June 10, 1991.

---

1. Generally, subrogation is not available to a party discharging his own obligations.

James N. Clay, III, Memphis, for plaintiff-appellee.

Sam L. Crain, Jr., Memphis, for defendant-appellant.

CRAWFORD, Judge.

This case involves a suit for shipping charges due from transactions in interstate commerce. Defendant, Malone & Hyde, Inc., appeals from the order of the Chancery Court granting plaintiff, Rebel Motor Freight, Inc., summary judgment and awarding plaintiff the sum of $44,168.55 plus prejudgment interest in the amount of $24,441.27.

The first issue for review is whether the trial court erred in granting summary judgment.

From the pleadings, affidavits and exhibits in the record, we observe the following pertinent facts:

In 1985, Rebel and Malone & Hyde entered into an agreement for Rebel to ship petroleum products and other automotive supplies to Malone & Hyde's warehouse in Memphis from various locations in Missouri, Illinois, Georgia and Texas. Shipping rates were agreed upon between Malone & Hyde's transportation coordinator, Holcomb, and Rebel's sales manager, James. There were three groups of shipments. The first group consisted of 32 shipments of petroleum products from Conoco, Inc., in Hartford, Illinois. The second group consisted of 22 shipments of petroleum products from Valvoline Oil Company in St. Louis, Missouri. Holcomb and James

agreed that these shipments would move at a flat rate of $300 per truck load. The third group consisted of 13 shipments of batteries from cities in Texas and Georgia.

When the parties hereto made their agreement, Rebel represented to Malone & Hyde that it would publish the tariffs incorporating the rates upon which they agreed. However, this did not take place.

Rebel made the shipments, charged and was paid the amounts agreed upon for the freight charges pursuant to the various bills of lading for the shipments. In 1987, approximately two and one-half years after the last freight shipment by Rebel for Malone & Hyde, Malone & Hyde was notified by Mr. Charles Pinkston of Professional Truck Auditing, Inc., that an audit of the freight bills for the Valvoline shipments indicated that Malone & Hyde had been undercharged by Rebel a total of $2,313.61. Demand was made for payment of the sum and subsequently Malone & Hyde was notified of other undercharges resulting from the Conoco shipments and the battery shipments, for which demand was also made.

Suit was filed by Rebel for the additional amount allegedly due. Malone & Hyde's answer joined issue on Rebel's complaint. Rebel filed a motion for summary judgment supported by the affidavit of Pinkston. The affidavit has as exhibits, copies of the freight bills and tariff pages. It states that the tariffs on file concerning the Conoco shipment required freight charges of $2.82 increasing to $2.93 per hundred weight over the time period involved which resulted in an additional amount of $31,366.26 due from Malone & Hyde for the Conoco shipments. As to the Valvoline shipments, the affidavit states that while the published tariff was a flat truck load rate of $300, this included a 46,000 pound weight limit. The audit also revealed that Malone & Hyde was liable to Rebel for an additional $10.47 to $11.18 per hundred weight for the excess in each of the 22 shipments which amounts to $2,313.61. The audit revealed that the 13 shipments of batteries were undercharged but Malone & Hyde does not dispute the undercharge for the battery shipments.

In opposition to the motion for summary judgment, Malone & Hyde filed various affidavits. Holcomb's affidavit stated that in the Valvoline shipment, Valvoline was estimating the per case weight of the motor oil and the pallet weight which resulted in an overstatement of the weight on all of the 22 Valvoline shipments. Calculations made by Pinkston were based upon the weights shown on the bills of lading which were subject to correction and the lower weights would result in a smaller sum due for the undercharged tariffs. Holcomb's second affidavit states the published tariffs relied upon by Pinkston in connection with the Conoco shipment were incorrect and that the tariff rate in effect was a $300 flat truck load rate, the same that was used for the Valvoline shipments. The affidavit of Mr. James, who was the negotiating party for Rebel at the time the shipping agreements were made, substantiated the $300 per truck load rate for the Conoco shipments.

Joe Gallager was the plant supervisor for Valvoline in St. Louis at the time of the shipments. His affidavit states that the weights given at the time of the shipments were estimates, and it was later determined that they were overweight estimates. The company subsequently learned of this discrepancy and lowered the estimate to 24.5 pounds per case and 80 pounds per pallet, as opposed to the 25 pounds per case and 100 pounds per pallet used at the time the shipments were actually made.

Brian Hawker's affidavit was also filed. He is a production coordinator for Valvoline in Santa Fe Springs, California. His affidavit sets out the individual weights of the cases of the five types of the motor oil shipped under the agreement between Rebel and Malone & Hyde.

In summary, it appears that Rebel in support of its motion for summary judgment submitted two detailed affidavits from Pinkston with numerous exhibits which included the bills of lading and related documents. The affidavit establishes that the tariff applicable for the Valvoline shipments was $300 per truck load with a 46,000 pound limit. Pinkston's affidavit as-

serts that the weights shown in the various bills of lading for Valvoline shipments indicate additional sums due under the published tariffs.

Malone & Hyde's affidavits, on the other hand indicate that the weights shown on the bills of lading were not the correct weights and the affidavits provide the information to enable a determination of the correct weight.

On the Conoco shipments, Pinkston's affidavit sets out what he says are the published tariff rates for shipments from Hartford, Illinois to Memphis. The affidavits submitted by Malone & Hyde in opposition to the motion for summary judgment assert that St. Louis, Missouri and Hartford, Illinois are in the same commercial zone and the applicable tariff is the same as the rate for the Valvoline shipments.

The trial court granted summary judgment and awarded the sums claimed pursuant to Pinkston's audit for the Valvoline shipments from St. Louis, Missouri to Memphis and Conoco shipments from Hartford, Illinois to Memphis.

 The shipper as well as the carrier must be presumed to know the law, and to understand the rate charged could lawfully only be one fixed by the tariff. Carriers who sue to recover the full tariff rate after mistakenly undercharging the shipper cannot be estopped from asserting the correct rate on the basis of their prior representations to the shipper that the rate was lower. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir.Ill, 1979). Malone & Hyde concedes that the parties are bound by the freight rates specified in the published tariffs and that the tariffs control the freight charges regardless of the agreement between the parties.

In 13 Am.Jur.2d, Carriers, Sec. 116, it is stated:

§ 116. Generally.

The construction to be given to a carrier's tariff schedule, and the application thereof, ordinarily present questions of law where the language used is not technical, the meaning of the words is clear, and there is no ambiguity; such ques-

tions do not differ in character from those presented when the construction and application of the provisions of any other document are in dispute. The meaning and effect of particular provisions are to be ascertained from the language employed, the connection in which they are used, and their evident purposes. It may be necessary, however, in some instances, to resort to extrinsic evidence, such as with regard to the customary practice of the carrier.

\* \* \* \* \* \*

 Summary judgment is to be rendered by a trial court only when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.03 (1984). In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W.2d 420 (Tenn.App.1985); *Bennett v. Mid–South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983).

 Summary judgment is not proper where, although the basic facts are not in dispute, parties in good faith may disagree about the inferences to be drawn from those facts. *Blue Diamond Coal v. Holland–America Ins. Co.*, 671 S.W.2d 829 (Tenn.1984); *Prescott v. Adams*, 627 S.W.2d 134 (Tenn.App.1981).

In *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn.1975), Justice Harbison, commenting on the use of summary judgment, said:

The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts.

Where there does exist a dispute as to facts which are deemed material by the trial court, however, **or where there is uncertainty as to whether there may be such a dispute,** the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.... (Emphasis supplied).

528 S.W.2d at 24, 25.

■ As to the Conoco shipment, the record indicates a dispute as to the applicable tariff and the construction of the tariff relied upon by plaintiff. As to the Valvoline shipments, the record indicates a dispute as to the weights of the various shipments.

Accordingly, from the record in this case, we do not feel that summary judgment was appropriate.

Since this case will be remanded to the trial court, we will briefly discuss the second issue for review which is:

2. Whether the trial court erred in awarding plaintiff prejudgment interest.

The parties concede that the question of Rebel's entitlement to prejudgment interest is controlled by federal law and that there is no express statutory provision mandating the award of prejudgment interest.

■ In a statute which creates an obligation, the absence of an express prohibition for interest on such obligation does not prohibit an award of interest, but the determination for an award of interest should be made based upon an appraisal of the Congressional purpose imposing the obligation and in light of general principles deemed relevant. *Rodgers v. United States,* 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947). The purpose of the obligation requiring the carrier to charge only the rates published with the ICC is to prevent price discrimination and to stabilize the rates. See *Maislin Industries, U.S. v. Primary Steel, Inc.,*

— U.S. ——, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990).

■ In *Rodgers v. United States,* 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947), the Court noted that "a persuasive consideration in determining whether such obligations shall bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed...." 68 S.Ct. at 7.

■ In the case at bar, we note that Rebel unequivocally agreed to the rates for the shipments involved and although under the law it is entitled to collect the correct amount pursuant to the published tariff, it should not be allowed to benefit from its representation to the extent of obtaining interest on the amount that it had agreed in effect not to charge. The loss of use of this money is a voluntary act on the part of Rebel and accordingly merits no consideration for an award of prejudgment interest. It is clear that interest as a matter of right is purely statutory and is unknown to the common law. Under common law the award of interests is a matter of discretion for the court or the jury to be allowed according to the facts presented. *Air Temperature, Inc. v. Morris,* 63 Tenn. App. 90, 469 S.W.2d 495 (1970).

On remand, the trial court should consider all the facts involved should it be presented with the question of prejudgment interest.

The order of the trial court granting summary judgment is reversed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellee.

TOMLIN, P.J. (W.S.), and WILLIAMS, Special Judge, concur.