**UNITED STATES of America,
Plaintiff,**

v.

**ASSOCIATED TRANSPORT, INC., et al.,
Defendants.**

**Civ. A. No. 2003–71.**

United States District Court,
District of Columbia.

May 12, 1972.

A. Patricia Frohman, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Bryce Rea, Jr., Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

This is a suit by the United States of America to recover from Defendants, all motor common carriers of property, a portion of the freight charges Defendants assessed and the United States paid for the transportation of furniture in interstate commerce at various times between May 6, 1969 and December 18, 1970. The cause came on for hearing on Defendants' Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted. The Court having considered the Complaint, the Motion and the written and oral arguments thereon grants the Motion for the following reasons.

The National Motor Freight Classification is the tariff filed with the Interstate Commerce Commission which contains the classifications of property for rate-making purposes governing transportation by some 5,400 motor common carriers of property, including Defendants herein. On or about December 1, 1967 there were filed with the Interstate Commerce Commission numerous increases and some reductions in the classifications of furniture. Protests against the increases were filed with the ICC and it was requested to exercise its authority under Section 216(g) of the Interstate Commerce Act, 49 U.S.C. 316(g), to suspend the effectiveness of the increases and institute a formal investigation of their reasonableness.

The ICC refused to suspend the increases and permitted them to become effective on January 16, 1968. However, it did institute a formal investigation of the reasonableness of both the increases and the reductions, in which proceeding the carriers had the burden of proof. The investigation entailed hearings before a Hearing Examiner, a recommended report and order by him, exceptions to his recommended report and order, a report and order by a review board, reconsideration of the report and order of the review board by a Division of the ICC and finally, on November 17, 1970, the issuance of a report and order by the entire ICC. The ICC found that the changed classifications on furniture were "not shown to be just and reasonable" and ordered them cancelled on or before December 18, 1970. The carriers, including Defendants herein, complied with the ICC's order by filing tariffs cancelling the changed classifications and reinstating as of December 18, 1970, the classifications that had been in effect immediately prior to January 16, 1968.

Plaintiff seeks recovery of the difference between freight charges calculated at the increased classifications and freight charges calculated at the prior classifications on shipments of furniture transported for it between May 6, 1969 and December 18, 1970. Plaintiff's theory is that the increased classifications, having been found "not shown to be just and reasonable", were unlawful and that it is therefore entitled to restitution of charges collected thereunder. Plaintiff relies entirely on Middlewest Motor Freight Bureau, et al. v. United States, 433 F.2d 212 (8th Cir. 1970).

In *Middlewest*, as here, the ICC conducted a formal investigation of increased rates which it had permitted to take effect. At the conclusion of the hearings the ICC, as here, found that the carriers had failed to carry their burden of proving that the increases were just and reasonable and ordered them cancelled. The carriers sought and the ICC granted several postponements of the order of cancellation. Finally, being unable to secure further postpone-

ment, the carriers brought suit in a United States District Court to set aside and enjoin the ICC's order. The Court issued an order temporarily restraining the order of the ICC conditioned upon the carriers posting bond for the payment of damages in the event that it should subsequently be determined that the ICC's order of cancellation was valid. Thereafter the Court denied the carriers' motion for an interlocutory injunction and dissolved the temporary restraining order.

Upon the dissolution of the temporary restraining order the carriers sought and obtained from the ICC a further postponement of the effective date of the order of cancellation, but eventually complied with it. Thereafter, the ICC having permitted the carriers to make new increased rates effective, the carriers sought and obtained a dismissal of their suit as moot. The dismissal left for resolution the issue of the carriers' liability to make restitution to shippers of freight charges that they would not have collected but for the temporary restraint of the ICC's order. The Court of Appeals held that the carriers were liable in restitution for the period during which the temporary restraint was effective, invoking the equitable rule that one suffering loss by virtue of the issuance of a temporary restraining order is entitled to damages in the event it is subsequently determined that the temporary restraining order was improvidently issued.

The carriers in *Middlewest* sought to defeat restitution on the ground that the ICC had not found the increased rates to be unlawful, i. e., unjust and unreasonable. The Court rejected the argument on the ground that the finding of the ICC that the carriers had not shown the rates to be just and reasonable and its order directing the carriers to cancel them rendered them unlawful as of the date they were required by the ICC to be cancelled. In so holding the Court was at pains to "limit the sense in which we are applying the term 'unlawful' to these tariffs."

"In holding that the tariffs are unlawful, we are not expressing any affirmative judgment that the rates embodied in them are in any substantive way violative of the Act—e. g., that they are unreasonably high or discriminatory. Such a judgment lies solely within the province of the Interstate Commerce Commission. Nor does this holding imply that the tariffs were unlawful in any sense whatsoever *prior* to the Commission's final order. * * * The conclusion that the tariffs were unlawful is restricted to the sense that by virtue of the Commission's cancellation order, *as it operated prospectively*, the carriers no longer had the right to maintain that particular tariff; maintenance of the tariff in violation of the order was unlawful." 433 F.2d at 222. (First emphasis the Court's; second emphasis supplied.)

 *Middlewest* thus recognized that the basic rate regulatory authority of the ICC is prospective and not retrospective. Indeed, the Interstate Commerce Act makes this clear. Section 216(e), 49 U.S.C. 316(e), conferring the basic power, gives the ICC the authority to investigate, upon complaint or *sua sponte*, the lawfulness of the rates of motor common carriers. If, after hearing, it finds them unjust or unreasonable or otherwise unlawful "it shall determine and prescribe the lawful rate[s], . . . thereafter to be observed." Section 126(g), 49 U.S.C. 316(g), under which the ICC acted in this case, gives it the additional authority to suspend and investigate proposed changes in rates. After hearing it "may make such order with reference thereto as would be proper in a proceeding instituted after the [changes] had become effective." In other words, the ICC's authority under Section 216(g) is the same as its authority under Section 216(e), namely, the authority to act prospectively. It follows that the classifications on which Plaintiff grounds its claim for restitution were not unlawful until the date on which the ICC ordered them cancelled.

Plaintiff asks this Court to grant it the recovery of part of the freight charges Defendants collected under classifications applicable to the transportation they performed for Plaintiff at the time they performed it. This no court can do absent a finding by the ICC that the applicable classifications were unjust and unreasonable and a further finding as to what classifications would have been just and reasonable. Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). In T. I. M. E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), the Supreme Court held that the ICC's only authority respecting the rates of motor common carriers was prospective. Hence, it held that the ICC could not determine the reasonableness of their rates during a past period. This holding, coupled with the rule of *Abilene*, completely foreclosed the recovery of damages by shippers based on a claim that effective and applicate rates were unreasonable.

As a result of the holding in *T.I.M.E.* the Congress amended Section 204a of the Interstate Commerce Act, 49 U.S.C. 304a, in 1965. The amendment gave shippers cause of action for reparations, which are defined as "damages resulting from charges for transportation services to the extent that the [ICC], upon complaint made as provided in section 316(e) [49 U.S.C. 316(e)], finds them to have been unjust and unreasonable, unjustly discriminatory or unduly preferential or unduly prejudicial." The Congress thereby gave the ICC limited retrospective authority over the rates of motor common carriers, i. e., ancillary authority to determine unreasonableness in the past in aid of the jurisdiction to entertain suits for reparations that the same amendment gave the courts. See Informal Procedure for Determining Motor Carrier and Freight Forwarder Reparation, 335 I.C.C. 403 (1969). In that case the ICC, upon review of the legislative history of the amendment concluded that it could determine the reasonableness of rates in the past only upon formal complaint under Section 216(e) and then only after a suit for reparations had been instituted.

Since T.I.M.E. held that shippers had no remedy in damages against motor common carriers for collecting unreasonable rates, the remedy subsequently given by the amendment of Section 204a is necessarily exclusive. *Middlewest* is not to the contrary. The Court there held that the existence of the remedy in reparations did not preclude a court from exercising its own independent equitable jurisdiction to award restitution in order to undo the damage done by its earlier exercise of its own equitable jurisdiction to issue a temporary restraining order enabling the carriers to maintain increased rates after the date on which the ICC had ordered them cancelled. This is not this case. On the contrary, here the carriers in fact cancelled the increased ratings on the date the ICC's order required.

For all of the foregoing reasons Defendants' motion to dismiss Plaintiff's complaint should be, and it is hereby, granted.

So ordered.