**MOHASCO INDUSTRIES, INC., et al.,**
**Plaintiffs-Appellants,**

v.

**ACME FAST FREIGHT, INC., et al.,**
**Defendants-Appellees.**

No. 73-2383.

United States Court of Appeals,
Fifth Circuit.

April 1, 1974.

Richard W. Dortch, Jackson, Miss., Richard J. Hardy, Thomas A. Phemister, Washington, D. C., Michael P. Regan, Amsterdam, N. Y., for plaintiffs-appellants.

Bryce Rea, Jr., Patrick McEligot, Washington, D. C., Junior O'Mara, Jackson, Miss., for all defendants-appellees except Acme Fast Freight.

Samuel Weiner, New York City, for Acme Fast Freight, Inc.

Before COLEMAN, CLARK and GEE, Circuit Judges.

COLEMAN, Circuit Judge:

Plaintiffs-appellants, Mohasco Industries, Inc., and its subsidiaries, Chromcraft Corporation, Futorian Corporation, and Monarch Furniture Corporation, sued the defendants-appellees,[1] motor

---

1. Acme Fast Freight, Inc., Arkansas Best Freight System, Inc., Beard Truck Line,

Clark Truck Line, Crouch Brothers, Inc., East Express, Inc., Hennis Freight Lines,

freight carriers, for restitution of excess freight charges collected between January 16, 1968 and December 18, 1970. Upon motion, the complaint was dismissed for failure to state a claim upon which relief could be granted. We affirm.

The National Motor Freight Classification, of which the defendant motor carriers are members, published increased freight rates, effective January 1, 1968, for less-than-truckload shipments of many items of furniture. Protests were immediately registered by the furniture manufacturers, shippers, and dealers. Prior to the effective date, the Interstate Commerce Commission of its own initiative undertook an investigation of the reasonableness of the proposed new rates. The rates, however, were not suspended by the Commission pending the investigation, thus permitting them to take effect on January 16, 1968.

The Interstate Commerce Commission proceedings culminated in a finding by the hearing examiner that the increased rates had not been shown to be just and reasonable. In an order issued January 13, 1969, the examiner directed cancellation within thirty days. This order was stayed pending review by a Commission Review Board. The Board sustained the hearing examiner and ordered the rates cancelled by June 13, 1969. Again, this order was stayed while the motor carriers petitioned for reconsideration. Finally, on November 2, 1970, the Commission *en banc* held that the proposed changes were not shown to be just and reasonable, Classification Ratings on Furniture, 1970, 337 ICC 709. The Commission then ordered the increased rates cancelled by December 18, 1970. In compliance with that order, the carriers reinstated the rates which had been in effect immediately prior to January 16, 1968.

On May 12, 1972, eighteen months after the old rates had been placed back in effect, plaintiffs-shippers filed suit in the District Court for the Southern District of Mississippi for restitution of the excess charges collected between January 16, 1968 and December 18, 1970. It was alleged that since the increased rates had not been shown to be just and reasonable, they were necessarily unjust and unreasonable from their inception, hence unlawful under the Interstate Commerce Act prohibiting unjust and unreasonable charges.[2] It was further alleged that the carriers had an equitable obligation to refund the amounts collected in excess of the once existing and subsequently reinstated rates. This amounted to $172,258.94.

The defendants-motor carriers moved to dismiss, asserting that the complaint failed to state a claim upon which relief could be granted. Looking to United States v. Associated Transport, Inc., D. D.C., 1972, 347 F.Supp. 650, as authority for its decision, the District Court granted the motion. This appeal followed.

On August 9, 1935, Congress enacted Part II of the Interstate Commerce Act, 49 U.S.C., § 301 et seq., commonly referred to as the Motor Carriers Act of 1935. Prior to this enactment, there had grown up a considerable body of common law supporting a shipper's right to *restitution* for unjust, unreasonable, and therefore excessive charges, Arizona Grocery Company v. Atchinson, T. & S. F. R. Company, 1931, 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348; Arkadelphia Milling Company v. St. Louis S. W. R. Company, 1919, 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517; Baltimore & O. R. v. United States, 1928, 279 U.S. 781, 49 S.

Inc., McLean Trucking, Merchants Truck Line, Pacific Intermountain Express, Pic-Walsh Freight Company, Robinson Truck Line, Shumpert Truck Line, Spector Freight System, Inc., Springmeier Shipping Company, Universal Carloading and Distributing Company.

2. Section 216(a) of the Act, 49 U.S.C. § 316 (a), imposes upon motor carriers a duty to establish just and reasonable rates; Section 216(d), 49 U.S.C. § 316(d), prohibits any unjust and unreasonable charge and declares such charges to be unlawful.

1084

Ct. 492, 73 L.Ed. 954; Atlantic Coastline R. R. Company v. Florida, 1935, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451.

Until 1959 many considered that this common law right of recovery had survived the enactment of Part II of the Interstate Commerce Act by reason of its "savings clause", 49 U.S.C., § 316(j); [3] Barrows Porcelain and Enamel Company v. Cushman Motor Delivery Company, 1939, 11 M.C.C. 365; Bell Potato Chip Company v. Aberdeen Truckline, 1944, 43 M.C.C. 337.

This view fell prey to a total reversal on May 18, 1959, when the Supreme Court decided T. I. M. E. Incorporated v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952. As stated by the Supreme Court, the question in *T. I. M. E.* was:

"Can a shipper of goods by a certificated motor carrier challenge in post-shipment litigation *the reasonableness of the carrier's charges which were made in accordance with the tariff governing the shipment?*" [emphasis added.]

Although by a 5–4 vote of the Court, the answer was, "no". The common law remedy of restitution had not survived the enactment of the Motor Carriers Act of 1935, 49 U.S.C., § 301 et seq.; the "savings clause", Section 216(j) of the statute, 49 U.S.C., § 316(j), mandated no different result.

Hewitt-Robins, Incorporated v. Eastern Freight-Ways, Inc., 1962, 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142, was a case challenging a carrier's misrouting practices, not the "reasonableness" of rates. The Court allowed an action to proceed for common law recovery of sums paid because of misrouting, but it went to great pains to assert and reassert that the decision in *T. I. M. E.* stood unaltered and unreversed.

From the foregoing we are convinced that from and after the decision in *T. I. M. E.*, unless Congress by statute should

direct to the contrary, the shipper had no remedy in the courts on common law principles by which he could sue, after the fact, for the restitution of charges collected by motor carriers on tariffs duly filed with and left in effect by the Interstate Commerce Commission.

It necessarily follows that should Congress act in the premises, its enactments would provide the sole and exclusive remedy for excessive charges.

In 1965, Congress did act. It enacted the following statute:

"§ 304a. Actions for recovery of charges; limitation of actions, definition; effective date; action by or against United States

\* \* \* \* \* \*

"(2) For recovery of reparations, action at law shall be begun against common carriers by motor vehicle subject to this chapter within two years from the time the cause of action accrues, and not after, and for recovery of overcharges, action at law shall be begun against common carriers by motor vehicle subject to this part within three years from the time the cause of action accrues, and not after, subject to paragraph (3) of this section, except that if claim for the overcharge has been presented in writing to the carrier within the three-year period of limitation said period shall be extended to include six months from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice.

\* \* \* \* \* \*

"(5) The term 'reparations' as used in this section means damages resulting from charges for transportation services to the extent that the Commission, upon complaint made as provided in section 316(e) of this title, finds them to have been unjust and unreasonable, or unjustly discrimina-

3. 49 U.S.C. § 316(j):
"Nothing in this section shall be held to extinguish any remedy or right of action not inconsistent herewith."

tory or unduly preferential or unduly prejudicial.

"(6) The term 'overcharges' as used in this section shall be deemed to mean charges for transportation services in excess of those applicable thereto under the tariffs lawfully on file with the Commission.

"(7) The provisions of this section shall apply only to cases in which the cause of action may accure after June 29, 1949."

P.L. 89–170, 79 Stat. 651, 49 U.S.C., § 304a.

It is at once apparent that Congress did not alter or expand the "savings clause", 49 U.S.C., § 316(j).

Thus, the shippers in the instant case had available no relief other than that afforded by the 1965 enactment.

The instant appeal, however, is not concerned with "reparations" under the Act of 1965.

"Plaintiffs chose to pursue restitution, rather than following the then still-available course of an action at law for 'reparations' under Section 204a which offered the possibility of partial recovery for shipments delivered within two years prior to filing such an action."

Appellant's original brief, page 6.

It is strongly urged that *T. I. M. E.* has been "greatly eroded" by the impact of subsequent court decisions. The trouble with this argument is that none of these were decisions of the Supreme Court of the United States. These cases, and others pending which have been brought to the attention of the Court, indicate the existence of an organized move to have *T. I. M. E.* reversed. If that is to happen, it will have to be done by the Supreme Court, not by any of the inferior courts.

Moreover, we consider such cases as Middlewest Motor Freight Bureau v. United States, 8 Cir., 1970, 433 F.2d 212, to be inapposite.

In *Middlewest* the shippers sought recovery only for the period when a temporary restraining order was in effect, subsequent to an order of the Interstate Commerce Commission. Here, plaintiffs specifically seek recovery of excess payments from the very time the objectionable rates were first initiated.

The judgment of the District Court is Affirmed.