**UNITED STATES of America, Appellant,**

v.

**ASSOCIATED TRANSPORT, INC., et al.**

**No. 72–1946.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 18, 1973.

Decided Oct. 1, 1974.

---

43. 15 U.S.C. § 717r(b).

Eloise E. Davies, Atty., Dept. of Justice, with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, and Walter H. Fleischer, Atty., Dept. of Justice, were on the brief, for appellant. Morton Hollander and Thomas J. Press, Attys., Dept. of Justice, also entered appearances for appellant.

Bryce Rea, Jr., Washington, D. C., for appellees.

Richard J. Hardy, Washington, D. C., filed a brief on behalf of Mohasco Industries, Inc. as amicus curiae urging reversal.

Before WRIGHT, ROBINSON and MacKINNON, Circuit Judges.

PER CURIAM:

The United States as a shipper sued the defendant motor carriers in the District Court for restitution of excessive freight charges on furniture shipments made under published tariff rates which the Interstate Commerce Commission, following a formal investigation undertaken *sua sponte*, ultimately ordered set aside as not shown to be just and reasonable. The issue on this appeal is whether a shipper can sue an interstate motor common carrier for restitution of the excess of freight charges over just and reasonable rates, particularly in view of the express provision now made by the Motor Carrier Act of a remedy by way of reparations.[1] The focal inquiry is whether the saving clause of the Act[2] permits the judicially-conceived remedy of restitution to be used

---

1. 49 U.S.C. § 304a(2) (1970). It should be noted that in cases wherein excessive rate-charging has been rectified by the process of restitution, a remedy leading to reparations has been conspicuously absent.

2. 49 U.S.C. § 316(j) (1970).

as the vehicle for recovery of such an excess. Our answer is in the negative.[3]

In T. I. M. E., Inc. v. United States,[4] the Supreme Court concluded that recognition, by virtue of the saving clause, of the common-law right to reparations[5] would be incompatible with the statutory scheme.[6] While the Court's opinion does not treat restitution, the discussion leaves no doubt that restitution would have met the same fate.[7] In 1965, however, following the decision in T. I. M. E., Congress amended the Act to enable an aggrieved shipper to recover reparations for unreasonable rates.[8] Although this remedy was readily available here, the Government ignored it in favor of a nonstatutory bid for restitution.

In support of its position on restitution, the Government relies primarily upon Middlewest Motor Freight Bureau v. United States.[9] There, after the Interstate Commerce Commission suspended—pending investigation—increased rates filed by truckers, the latter secured a temporary restraining order barring the suspension, thus enabling the higher rates to go into effect. The restraining order was later dissolved, but the District Court rejected the Government's plea for restitution for the higher freight charges it had paid while the order was in force. On appeal, the Eighth Circuit ruled that restitution should be allowed.

Nonetheless, a suit for restitution cannot be maintained for the purpose envisioned in the case at bar. In *Middlewest*, the carriers sought and obtained a judicial order restraining the Commission's suspension order, and the courts have traditionally awarded restitution upon dissolution of injunctive orders later found to be improvident.[10] No inconsistency with provisions of the Act or with the administrative process it mandates was promoted by allowance of restitution for rates higher than those which could have been charged had the Commission's suspension order gone into effect. As the court stated, restitution is the "proper remedy to return the parties to the position they would have been in had the Commission's order not been judicially restrained."[11]

By contrast, in our case restoration to the financial status quo is sought because the Commission refused to suspend the rate increases when filed by the carriers. It left the rates in effect while it proceeded with an investigation, and almost three years later it held that the rates had not been shown to be just and reasonable. The problem was thus generated by Commission—within the administrative process prescribed by the Act—rather than by judicial action outside of that process. And although the Act declares excessive rates to be unlawful,[12] Congress has now provided a procedure designed specifically for rectification of such excesses.[13] By virtue of the 1965 amendment, a shipper may challenge a carrier's rates before the

---

3. For answers from other appellate courts see Mohasco Industries, Inc. v. Acme Fast Freight, Inc., 491 F.2d 1082 (5th Cir. 1974); S. S. Kresge Co. v. A & B Transfer, Inc., 488 F.2d 894 (6th Cir., decided December 5, 1973).

4. 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959).

5. See *id.* at 472 n. 12, 79 S.Ct. 904 and authorities there cited.

6. *Id.* at 468–480, 79 S.Ct. 904.

7. *Id.*

8. 49 U.S.C. § 304a(2), (5) (1970).

9. 433 F.2d 212 (8th Cir. 1970).

10. *E. g.*, Arkadelphia Co. v. St. Louis S. W. Ry., 249 U.S. 134, 145, 39 S.Ct. 237, 63 L. Ed. 517 (1935).

11. Middlewest Motor Freight Bureau v. United States, *supra* note 9, 433 F.2d at 244.

12. 49 U.S.C. § 316(d) (1970). This provision does not, however, create a cause of action for allegedly unreasonable past rates. T. I. M. E., Inc. v. United States, *supra* note 4, 359 U.S. at 468, 79 S.Ct. 904. See also Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 251, 71 S.Ct. 692, 95 L.Ed. 912 (1951).

13. 49 U.S.C. § 304a(2), (5) (1970).

Commission and, if successful, may recover reparations in court.[14] The frame and preamendment history of the Motor Carrier Act, as *T. I. M. E.* explains, evince a congressional intent to secure the reasonableness of rates through the administrative processes it prescribes, and to exclude liability of motor carriers to shippers on account of excessive rate-charging in the past.[15] By the 1965 amendment, Congress has relented somewhat, but only to the extent of admitting the current reparations procedure.

 There are fundamental differences, both in theory and in practice, between the doctrines of reparations and restitution as applied in situations involving excessive rates. In actions for reparations, shippers individually seek, as of right, damages measured by the exact difference between the charges paid and the just and reasonable rates.[16] Because any damages awarded are liquidated, it is necessary to know precisely what the just and reasonable rate was, and that determination can be made only by the regulatory agency.[17] Consequently, before a court can order reparations in favor of a shipper, the Commission must ascertain the just and reasonable rate.[18] Moreover, actions for reparations, which are "action[s] at law,"[19]

must be brought within specified periods of time.[20]

 On the other hand, restitution rests essentially on the doctrine of unjust enrichment.[21] In rate cases, restitution ordinarily involves a refund for the benefit of all consumers subjected to the excessive rate, and the refund may be less than the amount of the excess for all consumers.[22] So it is that restitution may become available once it is known that the rate under scrutiny was excessive,. without need to know just what a reasonable rate would have been.[23] And it would appear that a suit for restitution becomes time-barred, if at all, only as a result of laches.

These differences do not assist the Government, but rather accentuate its problem in the instant case. The Government bypassed the prescribed procedure for seeking reparations and brought instead what it considers a suit for restitution. Yet the Government demands exact damages, assumes the just and reasonable rate.[24] and remains insensitive to time limitations. In a word, the Government's approach seeks the best of both worlds.

As *Hewitt-Robins*[25] demonstrates, there are undoubtedly instances wherein the saving clause opens the door to restitution for violations of the Motor Car-

---

14. *Id.* See also Informal Procedure for Determining Motor Carrier and Freight Forwarder Reparation, 355 I.C.C. 403, 406–07 (1969).

15. T. I. M. E., Inc. v. United States, *supra* note 4, 359 U.S. at 468, 79 S.Ct. 904.

16. See 49 U.S.C. § 304a(5) (1970).

17. T. I. M. E., Inc. v. United States, *supra* note 4, 359 U.S. at 473, 79 S.Ct. 904; Texas & Pac. R. R. v. Abilene Cotton Oil Co., 204 U.S. 426, 448, 27 S.Ct. 350, 51 L.Ed. 553 (1907).

18. See 49 U.S.C. § 304a(5) (1970); Informal Procedure for Determining Motor Carrier and Freight Forwarder Reparation, *supra* note 14, 335 I.C.C. at 413.

19. 49 U.S.C. § 304a(2) (1970).

20. 49 U.S.C. §§ 304a(2), (8) (1970).

21. *E. g.*, Williams v. Washington Metropolitan Area Transit Comm'n, 134 U.S.App.D.C. 342, 364, 415 F.2d 922, 944 (1968), cert. denied, 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969).

22. *Id.*

23. See *id.* at 361–367, 415 F.2d at 941–947.

24. In the rate investigation preceding the Government's suit, the Commission did not determine what the just and reasonable rate was, but only that the carriers' filed rates had not been proven to be just and reasonable. One of the controversies on this appeal is whether that is tantamount to a determination that the immediately preexisting rates were the just and reasonable rates.

25. Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962).

rier Act which are unrelated to the inherent reasonableness of rates.[26] But, in our view, to allow a shipper to substitute the nonstatutory remedy of restitution for the statutory mechanism of reparations is to insult the policy and scheme of the Act as interpreted in *T. I. M. E.*[27]

Affirmed.

---

26. See also Pensick & Gordon, Inc. v. California Motor Express, Ltd., 302 F.2d 391, 394 (9th Cir. 1962), following remand, 323 F.2d 769, 771 (1963), cert. denied, 375 U.S. 984, 84 S.Ct. 518, 11 L.Ed.2d 472 (1964).

27. One facet of the inconsistency unavoidable in recognizing reparations and restitution as side-by-side remedies becomes apparent when it is realized that, with respect to a single rate which has been impugned, some shippers might sue for reparations while others might prefer to invoke restitution.