FRY TRUCKING COMPANY, Appellant,

v.

SHENANDOAH QUARRY, INC.

FRY TRUCKING COMPANY

v.

SHENANDOAH QUARRY, INC.,
Appellant.

Nos. 79–1668, 79–1761.

United States Court of Appeals, District
of Columbia Circuit.

Argued April 14, 1980.
Decided June 24, 1980.

Daniel B. Johnson, Washington, D. C., with whom James Anton, Washington, D. C., and Gary E. Thompson were on brief, for appellant in No. 79–1668 and appellee in No. 79–1761.

Paul M. Rhodes, Washington, D. C., for appellee in No. 79–1668 and cross-appellant in No. 79–1761.

Before McGOWAN and WILKEY, Circuit Judges, and RONALD N. DAVIES,* United States Senior District Judge for the District of North Dakota.

Opinion for the court filed by Senior District Judge RONALD N. DAVIES.

RONALD N. DAVIES, Senior District Judge:

This appeal stems from the attempt of a common carrier by motor vehicle operating under a certificate of convenience and necessity issued by the Interstate Commerce Commission (ICC) to recover sums allegedly due for transportation charges which were billed and paid for at less than published tariff rates.

Section 217(b) of the Interstate Commerce Act, 49 U.S.C. § 317(b) provides in part that:

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time  .   .   .

Fry Trucking Company (Fry), a common carrier with published tariff rates, commenced in June, 1973, to transport stone from a quarry in West Virginia to Bethesda, Odenton, Mitchelville and Rockville, Maryland and the District of Columbia pursuant to a written contract with Shenandoah Quarry, Inc. (Shenandoah), which provided, inter alia, that:

Tariff—The haul rate from said quarry to the stock pile area located on the premises of Asphalt Construction, Inc., Ninth and Brentwood Streets, Washington, D. C. shall be two dollars ($2) per ton. All other haul rates shall be mutually agreed upon as the need arises, but in no case shall any haul rate exceed the lowest haul rate quoted to Shenandoah Quarry, Inc. by more than five percent (5%).

Fry, not having authority to provide services to Odenton and Mitchelville, Maryland, entered into an oral lease to use the equipment of Paul Liskey, a common carrier with authority to provide services to these points.

From June, 1973 to March, 1974, Shenandoah paid and Fry accepted the agreed upon contract rates. After the parties terminated their business arrangement, Fry, relying on § 217(b) of the Act, supra, commenced this action seeking to recover, as undercharges, the differences between the agreed upon contract rates and its published tariff rates for services to Bethesda, Rockville and the District of Columbia and the differences between the agreed upon contract rates and Liskey's published tariff rates for services to Odenton and Mitchelville.

Shenandoah, contending that Fry was estopped by its actions from claiming common carrier status, denied liability and, alleging that Fry had violated the Act by performing services to Odenton and Mitchelville without authority, counterclaimed for the amounts paid for services to these points.

The district court ordered the parties to file cross motions for summary judgment on the issue of liability and referred the matter to a magistrate. The magistrate, in a memorandum opinion, rejected Shenandoah's estoppel argument:

".   .   . it is now well settled that 'no legal or equitable defenses are available to a shipper who has been undercharged.' *Alleghany Corp. v. Romco, Inc.* [392 F.Supp. 38 (D.C.)] at 39; *Louisville and Nashville Railroad Company v. Central Iron and Coal Company,* 65 [265] U.S. 59 [, 44 S.Ct. 441, 68 L.Ed. 900] (1924); *Lowden v. Simonds-Shields-Lonsdale Grain Company,* 306 U.S. 516 [, 59 S.Ct. 612, 83 L.Ed. 953] (1939). Thus, courts have consistently applied the published tariff rate and will not consider the parties intent, acts, omissions, contracts or hardships on the shipper. *Chicago and North Western R. Co. v. Union Packaging Company,* 514 F.2d 30, 32 (8th Cir. 1975); *Alleghany Corporation v. Romco, Inc.,* supra; *Bowser [and] Campbell v. Knox Glass, Inc.,* [390 F.2d 193 (3rd Cir. 1968)]; *Baldwin v. Scott County Milling Company,* 307 U.S. 478, 485 [, 59 S.Ct. 943, 948, 83 L.Ed. 1409] (1939).

"Accordingly, Fry is entitled to summary judgment as to liability on its claim for the difference between what was actually paid under its arrangement with Shenandoah and the amount which should have been forthcoming had the scheduled tariff rates been used  .   .   ."

The magistrate also held against Shenandoah on its counterclaim:

".   .   . Defendant's counterclaim must fail. It is clear that a shipper is liable even if the carrier has violated the Act. Here, there is no evidence, nor any formal adjudication demonstrating that plaintiff, in fact, has violated the Act and even if there were, as a matter of law and policy, the shipper is entitled to receive the tariff rate for services rendered. *Alleghany Corp. v. Romoco (sic), Inc.,* 392 F.Supp. 38 (W.D.Penn. 1975)."

The district court, after reviewing the magistrate's findings and the parties' exceptions thereto, entered judgment against Shenandoah on the issue of liability and ordered the matter referred to the magistrate for findings of fact and conclusions of law on the issue of damages.

After resolving the question of the number of miles to Rockville, Bethesda, and the District of Columbia to be used in determining the tariff rates to be applied to the undisputed number of shipments and tonnage transported, the magistrate calculated the amount of undercharges, adjusted by amounts previously received by Fry, for services to these points. However, the magistrate refused to award undercharges for services to Odenton and Mitchelville, holding that:

"15. The Interstate Commerce Act prohibits 'Transportation [by common carrier] of passengers and property unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published . . .'

"16. Plaintiff was not authorized by the ICC to perform transportation services to Odenton and Mitchelville, Maryland. Plaintiff's oral agreement with Paul Liskey, who did have such authority, pursuant to which plaintiff purported to lease Liskey's operating authority was not approved or authorized by any regulation or ruling of the Commission. The Commission has determined that such arrangements are unlawful. See Samuel Tischler Extension-Canned Goods, No. MC–60612 (sub No. 12), decided January 7, 1960.

"17. If this court were to enforce such an agreement, it would, in effect, approve a convenient method of circumventing the regulatory scheme of the Commission and would contravene the oft stated goal of maintaining respect for the rates established under ICC procedures.[7]

"[7] This conclusion is contrary to the conclusion reached by the magistrate in the memorandum opinion filed April 7, 1978."

"18. Because plaintiff did not follow its authorized route in performing transportation services to Odenton and Mitcheville (sic), Maryland, it cannot take advantge of published tariff rates to recover undercharges. See *Mars Express, Inc. v. David Masnick (sic), Incorporated*, 401 F.2d 891 (2nd Cir. 1968)."

The district court, in adopting the magistrate's findings of fact and conclusions of law and entering judgment thereon, held that:

". . . Rule 53(e)(2) of the Federal Rules of Civil Procedure provides that a 'court shall accept the master's findings of fact unless clearly erroneous.' Applying this standard to the master's findings of fact, the court is unable to find that any finding is clearly erroneous. Moreover, the court is in complete accord with the magistrate's conclusions of law."

Both parties have appealed, Shenandoah from the dismissal of its counterclaim and the determination that it was liable for undercharges[1] and Fry from the denial of its claim for undercharges for services to Odenton and Mitchelville.

The general principles of law involved are well established:

"The Interstate Commerce Act was designed to provide uniformity in charges for services, and, thereby, to prevent rate discrimination. . . . If a carrier could modify its tariffs without filing a new tariff, it could engage in rate discrimination. Similarly, to permit a party to invoke estoppel in cases in which a recipient of services covered by a tariff was promised a different charge for those services would undermine the policy of uniformity in charges that underlies the Interstate Commerce Act; it would be possible for rate discrimination to occur through the subterfuge of a carrier's deliberately misinforming a shipper as to the proper charges for services to be rendered.

1. Shenandoah also asserts as erroneous the findings of the magistrate as to the mileages to be used in computing the undercharges. The findings of the magistrate, adopted by the district court, are not clearly erroneous, Fed.Rules Civ.Proc. rule 52(a), and will not be set aside.

"Therefore, filed tariffs have the force of law, . . . and establish the liability of a recipient of services covered by the tariff, even if the recipient was quoted a different price, . . . or was party to a contract under which the services were to be provided at a different price . . . . A carrier cannot waive or modify legally applicable tariffs, . . and individual hardship is not a defense to the application of such tariffs. . . Equitable considerations cannot justify a carrier's failure to collect authorized tariff charges . . . . nor can they be invoked as the basis for an estoppel to collect such charges. . . ." (Citations omitted.) *Ill. Cent. Gulf R. Co. v. Golden Triangle, etc.*, 586 F.2d 588 (5th Cir. 1978).

However, these principles have never been understood to mean that carriers are entitled to recover the charge set by the tariff even if the carriage is unauthorized or illegal, *St. Louis Southwestern Ry. Co. v. Garvey Elevators, Inc.*, 505 F.2d 625 (5th Cir. 1974), and where the particular service performed is not authorized by the carriers ICC certificate of public convenience, which limits the territorial scope of operations, any extra-territorial service is illegal. *Mars Express, Inc. v. David Masnik, Incorporated*, 401 F.2d 891 (2d Cir. 1968), *Nyad Motor Freight, Inc. v. W. T. Grant Company*, 486 F.2d 1112 (2d Cir. 1973).

The lower court, in adopting the magistrate's findings of fact and conclusions of law, correctly determined that Shenandoah was liable to Fry for charges made at below published tariff rates for services to Bethesda, Rockville, and the District of Columbia, points within its territorial scope of operations authorized by its certificate of public convenience issued by the ICC.

The district court was also correct in adopting the magistrate's determination that Fry could not recover undercharges for services to Odenton and Mitchelville,[2] points outside its operating authority. To permit

a common carrier, without ICC consideration or approval, to perform extra-territorial services by using the equipment of a carrier with such authority and then to base a claim for undercharges on the second carrier's published tariff rates would create a type of situation the Act was designed to prevent.

The distinction between allowing recovery of the full filed tariff rate in the case of the carrier who performed services on his own certificated route and of disallowing recovery of such full tariff rate, when the carrier is not certificated on that route but performs services under a private contract calling for a lower rate than the filed tariff, is that the rationale for allowing the carrier to recover the full tariff rate is that the shipper is charged with constructive notice of the actually filed rate. *See, e. g., Nyad Motor Freight v. W. T. Grant Company*, 486 F.2d 1112 (2d Cir. 1973); *Louisville & N. R. R. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915); *Bowser & Campbell v. Knox Glass, Inc.*, 390 F.2d 193, 196 (3d Cir. 1968) ("The rate filed is a matter of public record of which the shipper must take notice at his peril"). The problem is that if the carrier is not authorized on the route, then he has no rate on file with the ICC, and the shipper has no way of checking the file for that carrier and discovering what the actual rate is. Therefore, it is impossible to charge the shipper with constructive notice of the rate, and it would be unjust to charge him the full tariff rate established for some other carrier on that route.

The ICC is charged with enforcing compliance with the Act, 49 U.S.C. §§ 304, 312, 322, and must depend on filed documents to make a knowledgeable determination that the services rendered and the charges made are appropriate. While the Act does not prevent one carrier from placing his equipment under control of another authorized carrier under a lease or similar arrangement, e. g., 49 C.F.R. § 1057, the statute is

---

2. By adopting the magistrate's conclusions of law on the issue of damages that were contrary to the conclusion on the issue of liability for services to these points, the district court implicitly amended the judgment entered earlier on the issue of liability.

enforced by treating the *user* of the equipment as the provider of services who must possess a certificate issued by the ICC. 49 U.S.C. § 303(c).

As to Shenandoah's counterclaim, we find that it cites neither statutory nor case-law authority for the proposition that a court must compel a carrier which has provided services outside the scope of its authority to refund amounts the shipper has already paid for those services. *Mars Express, Inc. v. David Masnik, Inc.*, 401 F.2d 891 (2d Cir. 1968), which Shenandoah cites in its brief, is not an authority, since there the court held only that it would not compel a shipper to pay undercharges for services performed outside the scope of the carrier's authority. We therefore affirm the dismissal of Shenandoah's counterclaim.

*Affirmed.*