SQUARE D COMPANY, APPELLEE, *v.* ADVANCE FREIGHT, LTD., APPELLANT.

(No. C-860683—Decided May 25, 1988.)

Stephen D. Strauss, for appellee.
Hartke & Hartke and Wayne Hartke, for appellant.

SHANNON, P.J. Defendant-appellant, Advance Freight, Ltd. ("Advance Freight"), has taken the instant appeal

from the entry of judgment below in favor of plaintiff-appellee, Square D Company ("Square D"), on Square D's complaint to recover freight transportation charges billed and collected by Advance Freight in contravention of the Interstate Commerce Act. On appeal, Advance Freight presents five assignments of error.

The material facts underlying the instant action are uncontroverted. Square D is a manufacturer of electrical equipment, and Advance Freight is a motor common carrier subject to the Interstate Commerce Act ("Act"), Section 10101 *et seq.,* Title 49, U.S. Code. From April through June 1982, Advance Freight transported in interstate commerce fifteen shipments of electrical equipment for Square D and billed and collected from Square D $41,419.85 in freight charges. Square D subsequently deemed the freight charges to be excessive and found that Advance Freight had transported its freight without operating authority and without filing with the Interstate Commerce Commission ("ICC") the requisite tariffs covering the movements. Thus, in May 1984, Square D brought the instant action against Advance Freight, alleging that Advance Freight had acted in contravention of the Act in transporting Square D's freight and in assessing and collecting transportation charges; the relief sought in the complaint was full recovery of the unlawful freight charges or, in the alternative, the amount paid in freight charges in excess of a reasonable rate for the transportation provided. The matter was tried to the court, which determined that Advance Freight had transported Square D's freight and had assessed and collected transportation charges in contravention of the Act and, therefore, was entitled to no compensation. Thus, the court entered judgment in favor of Square D in the amount of $41,419.85.

Advance Freight, in its first assignment of error, contends that the trial court's determination that Advance Freight was entitled to no compensation for its transportation of Square D's freight was contrary to law. We agree.

The rights and liabilities of parties to an interstate carriage of goods are governed by federal statutes and decisions. *Wilson* v. *Pennsylvania RR. Co.* (1939), 135 Ohio St. 560, 14 O.O. 429, 21 N.E. 2d 865; *CRST, Inc.* v. *A & W Foods, Inc.* (Nov. 20, 1986), Cuyahoga App. No. 51373, unreported. Pursuant to Section 10921, Title 49, U.S. Code, a common carrier may provide transportation only if it holds the appropriate certificate, permit or license issued by the ICC. Section 10761(a), Title 49, U.S. Code, prohibits a carrier from providing transportation unless the rate for that transportation is set forth in an effective tariff filed with the ICC and forbids a carrier from charging or receiving compensation for transportation contrary to the rate specified in the tariff. It is undisputed that Advance Freight possessed no operating authority and had no tariffs on file with the ICC covering the transportation of Square D's freight. Thus, Advance Freight transported Square D's freight and collected transportation charges in contravention of the Act.

The controversy on appeal centers on the implications of Advance Freight's unlawful transportation of Square D's freight. Square D, in support of the trial court's determination that Advance Freight was entitled to no compensation for its unlawful transportation of Square D's freight, relies on the decision of the Second Circuit Court of Appeals in *Mars Express, Inc.* v. *David Masnik, Inc.* (C.A. 2, 1968), 401 F. 2d 891. In *Mars,* a common carrier brought an action against a shipper to recover transportation charges that were billed and collected at less

than the published tariff rates. The court held that a carrier under the jurisdiction of the ICC which lacked the requisite ICC operating authority could not recover from the shipper *undercharges* for illegal carriage off-route. However, the interpretation of the decision in *Mars* advanced by Square D on appeal, *viz.*, that a shipper is entitled to recover from a carrier amounts paid for transportation of freight without operating authority and without the filing of tariffs covering the movements, has been rejected by the United States Court of Appeals for the District of Columbia in *Fry Trucking Co. v. Shenandoah Quarry, Inc.* (C.A.D.C. 1980), 628 F. 2d 1360, and by the United States District Court for the Northern District of Illinois in *Larson Service Co. v. H. B. Fuller Co.* (N.D. Ill. 1986), 634 F. Supp. 947.

In *Fry, supra*, as in *Mars, supra*, a carrier brought an action against a shipper to recover transportation charges billed and collected at less than the published tariff rates. The shipper counterclaimed to recover amounts paid for transportation of freight to points outside the carrier's territorial operating authority. The court in *Fry* held, consistent with the holding in *Mars*, that the carrier could recover for charges made at below tariff rates for services to points within its territorial scope of operations but could not recover undercharges for services to points outside its operating authority. However, the court affirmed the district court's dismissal of the shipper's counterclaim upon its determination that neither statutory nor case-law authority supported the position advanced therein and that the decision in *Mars* would not operate to compel a carrier to disgorge amounts already paid by a shipper for services provided by the carrier outside the scope of its operating authority.

Similarly, the United States District Court for the Northern District of Illinois in *Larson, supra*, dismissed the counterclaim of a shipper seeking a refund of transportation charges paid to a carrier for transportation of the shipper's goods prior to the effective date of the carrier's tariff. The court cited *Fry, supra*, for the proposition that a "common carrier is not obligated to refund the shipper's payment for services provided to areas in which the common carrier had neither I.C.C. authority nor an established tariff," and remarked upon the otherwise "inequitable result of granting [the] shipper * * * free transportation services at the expense of * * * [the carrier]." *Larson, supra*, at 948. The court thus held that the shipper had no right to recover transportation charges paid to a common carrier for services performed prior to the effective date of a tariff. *Id.*

Upon the authority of *Fry* and *Larson*, we conclude that the trial court erred in its determination that Square D was entitled to a refund of all freight charges remitted to Advance Freight for its transportation of Square D's freight without operating authority or established tariffs. Accordingly, we sustain Advance Freight's first assignment of error.

In its second, third and fifth assignments of error, Advance Freight contends that the trial court erred in failing to determine a reasonable charge for its transportation of Square D's freight and thereupon awarding Advance Freight quantum meruit recovery. We find no merit to this contention.

As we noted *supra*, Square D in its complaint advanced alternative theories of recovery. In count one, Square D sought a full refund of the freight charges collected by Advance Freight for its transportation of Square D's freight without ICC

operating authority or established tariffs. We determined in response to Advance Freight's first assignment of error that the decisions in *Fry, supra,* and *Larson, supra,* bar this avenue of recovery. In count two of its complaint, Square D advanced an alternative claim, sounding in common-law restitution, to recover amounts paid in excess of a reasonable rate for the transportation provided. Pursuant to Section 10701(a), Title 49, U.S. Code, "[a] rate * * * related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission * * * must be reasonable." Thus, an issue remains as to whether Square D can recover in a state court under the common-law theory of restitution the excess of freight charges collected over a reasonable rate.

In *United States* v. *Associated Transport, Inc.* (C.A.D.C. 1974), 505 F. 2d 366, the United States Court of Appeals for the District of Columbia addressed the issue of whether a shipper could sue an interstate motor common carrier for restitution of the excess of freight charges over a reasonable rate and determined that it could not. The court noted that the Act provides an aggrieved shipper with the statutory remedy of "reparations," pursuant to which the shipper may challenge a carrier's rates as unreasonable before the ICC and may then recover in court damages measured by the exact difference between the charges paid and the ICC's determination of a just and reasonable rate. See Section 11705(b)(3), Title 49, U.S. Code. The court declined to extend to a shipper a common-law right to restitution stating that "to allow a shipper to substitute the nonstatutory remedy of restitution for the statutory mechanism of reparations is to insult the policy and scheme of the Act * * *." *Associated Transport, supra,* at 370;

see, also, *Mohasco Industries, Inc.* v. *Acme Fast Freight, Inc.* (C.A. 5, 1974), 491 F. 2d 1082, certiorari denied (1974), 419 U.S. 842; *S. S. Kresge Co.* v. *A & B Transfer, Inc.* (C.A. 6, 1973), 488 F. 2d 894, certiorari denied (1974), 415 U.S. 960. Compare *Middlewest Motor Freight Bureau* v. *United States* (C.A. 8, 1970), 433 F. 2d 212, certiorari denied (1971), 402 U.S. 999 (A shipper may recover in restitution upon the dissolution of an injunctive order restraining the ICC's suspension of increased rates filed by carriers because courts have traditionally awarded restitution upon the dissolution of injunctive orders later found to be improvident). The court in *Associated Transport* further noted that the statutory mechanism for the recovery of reparations requires a determination of a reasonable rate and that such a determination can only be made by the ICC. Thus, a shipper's recourse in challenging the reasonableness of a carrier's freight charges lies, in the first instance, with the ICC. See, also, *T.I.M.E., Inc.* v. *United States* (1959), 359 U.S. 464; *Interstate Commerce Comm.* v. *B & T Transp. Co.* (C.A. 1, 1980), 613 F. 2d 1182.

Thus, upon our determination that the trial court had no jurisdiction to determine a reasonable rate for Advance Freight's transportation of Square D's freight and no authority to award to Square D restitution in the amount of the excess of the freight charges collected over a reasonable rate, we overrule Advance Freight's second, third and fifth assignments of error.

In its fourth assignment of error, Advance Freight contests the trial court's citation of tariff-interpretation cases in support of its disposition below when the instant action did not entail the interpretation of a tariff. This challenge is obviated by our determination *supra* that the trial court

196

acted contrary to law in holding that Advance Freight was entitled to no compensation for its transportation of Square D's freight. Thus, the fourth assignment of error is subsumed in our disposition of the first assignment of error.

To summarize, we have found that the decisions in *Fry, supra,* and *Larson, supra,* precluded Square D's recovery under count one of its complaint of the freight charges collected by Advance Freight for its transportation of freight without ICC operating authority or established tariffs. We have further determined that the court lacked authority to grant Square D the relief sought in count two of its complaint, *i.e.,* to determine a reasonable rate for Advance Freight's transportation of Square D's freight and to award to Square D, under the common-law theory of restitution, the excess of the freight charges collected over a reasonable rate. We, therefore, reverse the judgment entered below and remand the matter to the trial court with instructions to dismiss the complaint.

*Judgment reversed.*

DOAN and HILDEBRANDT, JJ., concur.