**COLONIAL FAST FREIGHT LINES, INC.**

v.

**HOWARD LOVE MACHINERY SUPPLY, INC.**

No. 1:92–CV–0330.

United States District Court, E.D. Texas, Beaumont Division.

Aug. 10, 1993.

Robert Yaquinto, Jr., Sherman & Yaquinto, Dallas, TX, Robert B. Walker, Joseph L. Steinfeld, Jr. and John T. Siegler, Washington, DC, for plaintiff.

## ORDER

COBB, District Judge.

## I. BACKGROUND

This is a suit to recover damages resulting from freight undercharges. Defendant Howard Love Machinery Supply, Inc. (Howard), arranged for the plaintiff, Colonial Fast Freight Lines, Inc. (Colonial), to transport steel drilling pipe during the period January 25, 1990 through April 7, 1990, from Panama City, Florida, to Lone Star, Texas.

Colonial filed its tariff freight rate with the Interstate Commerce Commission (ICC). Colonial billed Howard, however, at a rate lower than the rate it published with the ICC. Howard paid every invoice submitted by Colonial. Colonial has filed a motion for summary judgment and claims it is entitled to the difference in the published fees and those it charged Howard, along with prejudgment interest.

Howard argues Colonial is a contract, not common, carrier, and therefore the posted rate doctrine does not apply to it. It there-

fore asserts that there is a genuine question of fact and summary judgment is not appropriate. For the reasons discussed below, this court finds Colonial was a common carrier and it is entitled to summary judgment.

## II. DISCUSSION

### A. *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party makes a sufficient showing, the non-moving party must then present affirmative evidence demonstrating that there are genuine disputes of material fact that must be resolved before its claim can be decided. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such an affirmative showing, then when there is no genuine issue as to any material fact, summary judgment is appropriate. Fed.R.Civ.P. 56(e).

### B. *Which Tariff Applies*

▉ The revised Interstate Commerce Act (the Act), 49 U.S.C. § 10101, *et seq.* requires all interstate motor common carriers to publish their rates in tariffs filed with the ICC and prohibits both carriers and shippers from deviating from those rates. 49 U.S.C. §§ 10761, 10762 (Supp.1993); *see also Maislin Indus. U.S., Inc. v. Primary Steel,*

*Inc.,* 497 U.S. 116, 120–21, 110 S.Ct. 2759, 2762–63, 111 L.Ed.2d 94 (1990). Once a tariff is duly published, the announced rate becomes the rate imposed by law. *Southern Pac. Co. v. Brown, Alcantar & Brown, Inc.,* 409 F.2d 1331, 1332 (5th Cir.1969). Under the Interstate Commerce Act, the carrier's filed rate is the only lawful charge. *Louisville & N.R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). Neither the shipper nor carriers are permitted to depart from these published rates because if the rates that were filed and published, as required by law, are subject to secret alternation by special agreement, then the statute would fail its purpose.[1] *Armour Packing Co. v. U.S.,* 209 U.S. 56, 81, 28 S.Ct. 428, 435, 52 L.Ed. 681 (1908); *Louisville & N.R. Co. v. Central Iron & Coal,* 265 U.S. 59, 65, 44 S.Ct. 441, 442, 68 L.Ed. 900 (1924) (no contract of carrier can reduce the amount legally payable for transportation of freight in interstate commerce); *Louisville & N.R. Co. v. Rice,* 247 U.S. 201, 202, 38 S.Ct. 429, 429, 62 L.Ed. 1071 (1918) (a carrier's claim is predicated on the tariff, not an understanding with the shipper).

The United States Courts of Appeals have also consistently applied the "filed rate doctrine." *See Sea–Land Serv., Inc. v. Murrey & Sons Co., Inc.,* 824 F.2d 740, 742 (9th Cir.1987) (a carrier can sue to recover charges listed in the tariff regardless of an agreement to accept a lower rate); *Louisville & N.R. Co. v. Mead, Johnson & Co.,* 737 F.2d 683 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 320 (1984) (misquotation of rate held not a bar to later recovery of correct rate); *Fry Trucking Co. v. Shenandoah Quarry, Inc.,* 628 F.2d 1360, 1363 (D.C.Cir.1980) (carrier awarded difference

---

1. Although the rule appears harsh, the filed rate doctrine has several purposes and rationales:

   The broad purpose of section 10762 is to prevent unjust discrimination against smaller shippers, and harmful competition among carriers. *Locust Cartage Co. v. Transamerican Freight Lines, Inc.,* 430 F.2d 334, 343 (1st Cir.), *cert. denied,* 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970); *Delta Traffic Serv. v. Georgia–Pacific Corp.,* 684 F.Supp. 769, 770 (D.Conn.1987). It is thought that by giving the public notice of rates and an opportunity to protest, the filing requirement ensures the sta-

   bility the motor carrier industry. *Southern Motor Carriers Rate Conference, Inc. v. United States,* 676 F.2d 1374, 1377 (11th Cir.1982). Part of the rationale, therefore, is that, by virtue of the filed tariff, shippers are charged with constructive notice of the applicable rate. *In re Carolina Motor Express, Inc.,* 84 B.R. 979, 990 (W.D.N.C.1988); *Fry Trucking Co. v. Shenandoah Quarry, Inc.,* 628 F.2d 1360, 1363 (D.C.Cir.1980).

   *Dan Barclay, Inc. v. Stewart & Stevenson Services,* 761 F.Supp. 194, 198–99 (D.Mass.1991).

between agreed-upon "contract rates" and published rates); *Nyad Motor Freight, Inc. v. W.T. Grant Co.*, 486 F.2d 1112, 1114 (2nd Cir.1973) (filed rate applied despite non-filed contract of parties to apply lower rate).

■ The Supreme Court decided a case with facts similar to the one at bar. In *Maislin Industries U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990), petitioner, a motor common carrier, negotiated a shipping rate with respondent, Primary Steel, for less than the petitioner's tariff rate filed at the ICC. Maislin never filed the negotiated rate with the ICC. Subsequently, Maislin filed for bankruptcy and the trustee appointed to oversee the carrier's freight bills found a discrepancy between the tariff rate and the rate at which the fright bills were paid. A suit was filed against Primary Steel to recover the undercharges. The Supreme Court held that the shipper is obligated to pay the carrier the filed rate, even though the two parties have negotiated a lower rate.[2]

■ In this case, the negotiated rate was not published with the ICC. Colonial correctly claims that, as a matter of law, Howard owes it the difference between the paid charges and those published with the ICC.

### C. *Common or Contract Carrier*

■ Howard argues that Colonial has failed to show that it was at all times relevant, acting only as a motor common carrier, and not as both a common carrier and a contract carrier. If Colonial was a contract carrier, it is exempt from the general "filed rate" rule. *Atlantis Express, Inc. v. Standard Transp. Serv., Inc.*, 955 F.2d 529, 533 (8th Cir.1992); *Dan Barclay, Inc. v. Stewart & Stevenson Services, Inc.*, 761 F.Supp. 194, 199 (D.Mass.1991). Howard asserts that the issue of whether Colonial was acting as a common carrier or contract carrier creates a general issue of fact, and therefore, summary judgment is not appropriate.

This court disagrees. The Act defines "motor common carrier" as "a person holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(14) (Supp.1993). A "motor contract carrier" is defined as

. . . a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—

(i) by assigning motor vehicles for a continuing period of time for the exclusive use of such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(15)(B) (Supp.1993).

In addition to having to meet the statutory definition of contract carriage, a carrier and a shipper must also comply with the ICC's implementing regulations. As plaintiff correctly points out, at the time the transactions at issue took place, the regulations at 49 C.F.R. § 1053.1 (1990) stated:

No contract carrier by motor vehicle, as defined in 49 U.S.C. § 10102(15) shall transport property for hire in interstate or foreign commerce except under special and individual contracts or agreements which shall be in *writing,* shall provide for transportation for a particular shipper or shippers, shall be bilateral and impose specific obligations upon both carrier and shipper or shippers, shall cover a series of shipments during a stated period of time in contrast to contracts of carriage governing individual shipments, and copies which contract or agreements shall be preserved by the carriers, parties thereto, so long as such contracts or agreements are in force and for at least one year thereafter.

(emphasis added).

■ Howard has not complied with the ICC's regulations. For example, the court received no evidence that there was ever a written, bilateral contract. Oral agreements are insufficient as a matter of law to create contract carriage. *Dan Barclay, Inc. v.*

---

**2.** The filed rate doctrine does have an important exception. The filed rate is not enforceable if the ICC finds the rate to be unreasonable. *Maislin,* 497 U.S. at 128, 110 S.Ct. at 2767. Howard does not allege, nor is there any evidence presented, that Colonial's filed rate was unreasonable. This court, therefore, does not need to reach this issue.

*Stewart & Stevenson Services, Inc.,* 761 F.Supp. 194, 201 (D.Mass.1991). Since there is no written contract in this case, Howard was not a contract carrier as a matter of law.[3]

### D. *Prejudgment interest*

■■■■ In actions for freight shipping undercharges, prejudgment interest is a mandatory element of damages. *Southern Pacific Transportation Co. v. San Antonio, Texas,* 748 F.2d 266, 274 (5th Cir.1984); *T. & M. Trans. Co. v. S.W. Shattuck Chem. Co.,* 158 F.2d 909, 910–11 (10th Cir.1947). The interest begins to accumulate from the date that payment is due because that is when the carrier begins to suffer harm. *Louisiana & Ark. Ry. Co. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir.1966).

In this case, Colonial is entitled to receive the amount of its undercharges. It is also entitled to prejudgment interest as a matter of law.

### III. CONCLUSION

This court finds that as a matter of law, Howard owes Colonial the difference between its paid amounts and the posted amounts, plus prejudgment interest from the time of the contract, plus post-judgment interest calculated from the date this court signs the final judgment. It is ORDERED, therefore, that Colonial's Motion for Summary Judgment is GRANTED and that Colonial will submit to the court a proposed judgment calculating the exact amount of damages.

---

**3.** In 1992, the ICC repealed 49 C.F.R. § 1053 (1990). It no longer requires a written, bilateral contract for a contract carriage to exist. *Atlantis,* 955 F.2d at 534. Rather than looking at the technical requirements of Section 1053, the ICC now considers "the totality of the circumstances surrounding any particular movement." Con-

tracts for Transportation of Property, Ex Parte No. MC–198, 8 I.C.C.2d 520, 529 (1992). The rationale for repealing the regulation was to minimize the likelihood of litigation based on technical noncompliance with Section 1053.1. *Id.* Unfortunately for Howard, the ICC's new policy came too late.